# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | |
|---|---|
| ENERGY TRANSFER LP and its subsidiary and employing entity LA GRANGE ACQUISITION, L.P., <br><br> Plaintiff, <br><br> vs. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in their official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br> Defendants. | Civil Action No. _____ <br><br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Energy Transfer LP ("Energy Transfer"), and its subsidiary and employing entity La Grange Acquisition, L.P. ("La Grange"), brings this action against Defendants National Labor Relations Board ("Board" or NLRB), NLRB General Counsel Jennifer Abruzzo ("Abruzzo"), NLRB Chairperson Lauren M. McFerran ("McFerran"), Board Member Marvin E. Kaplan ("Kaplan"), Board Member Gwynne A. Wilcox ("Wilcox"), Board Member David M. Prouty ("Prouty") (McFerran, Kaplan, Wilcox, and Prouty, collectively, "Board Members"), and Administrative Law Judge John Doe ("Doe"), for declaratory and injunction relief and states as follows:

## INTRODUCTION

1. La Grange brings this suit for declaratory and injunctive relief against Defendants because Defendants are presently pursuing an unconstitutional administrative proceeding against it.

2. La Grange will be able to demonstrate that it is entitled to injunctive and declaratory relief.

3. First, La Grange is likely to succeed on the merits of its constitutional claims that: the NLRB's Board Members are unconstitutionally insulated from removal; the NLRB's administrative law judges ("ALJs") are unconstitutionally insulated from removal; it is being deprived of its right to a jury trial regarding purely legal remedies sought by the NLRB; and the structure of the NLRB violates the separation of powers and La Grange's due process rights.

4. Second, La Grange will show it is likely to suffer both economic and constitutional harms due to the damages sought against it and the very nature of the proceedings it may be subject to.

5. Third, La Grange will demonstrate that the balance of equities tips in its favor because it stands to be stripped of its constitutional rights while Defendants stand to lose nothing.

6. Fourth and finally, it is in the public's interest to establish constitutional proceedings.

7. Because it is likely to succeed on the merits, La Grange respectfully requests this court grant its Motion for a Preliminary Injunction.

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. La Grange's claims arise under the Constitution of the United States. It alleges that certain

aspects of the NLRB's structure violate the Constitution. *See Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023) (holding statutory review schemes do not displace district court's federal question jurisdiction to adjudicate corporation's constitutional challenge to administrative agency).

9. This Court has authority to grant declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and under the Court's inherent equitable powers.

10. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because Defendants are officers of an agency of the United States and a substantial part of the events giving rise to the claim occurred in Mont Belvieu, Texas.

## PARTIES

11. Energy Transfer is a publicly traded limited partnership that owns and operates one of the largest and most diversified portfolios of energy assets in the United States. Energy Transfer operates a facility at 12353 Eagle Pointe Dr., Mont Belvieu, Texas, 77523. Employees at the Mont Belvieu facility process and store demethanized mix received from multiple internal and third-party oil pipelines. The individual Charging Party in the related and ongoing unfair labor practice charge worked at the Mont Belvieu facility.[1]

12. La Grange is an indirect subsidiary and employing entity of Energy Transfer, as well as the employer of the Charging Party. La Grange is a Texas corporation with its principal place of business located at 8111 Westchester Dr., Dallas, Texas, 75225.

13. Defendant NLRB is an administrative agency of the United States, headquartered in Washington, D.C. The NLRB enforces the National Labor Relations Act ("NLRA"). Under the

---

[1] The unfair labor practice charge at issue is Case No. 16-CA-306440. La Grange will not identify Charging Party's name to maintain his privacy.

NLRA, the NLRB is "empowered…to prevent any person from engaging in any unfair labor practice." *See* 29 U.S.C. § 160.

14.  Defendant Abruzzo is the General Counsel of the NLRB. She is sued in her official capacity.

15.  Defendant McFerran is Chairman of the NLRB. She is sued in her official capacity.

16.  Defendant Kaplan is a Member of the NLRB. He is sued in his official capacity.

17.  Defendant Wilcox is a Member of the NLRB. She is sued in her official capacity.

18.  Defendant Prouty is a Member of the NLRB. He is sued in his official capacity.

19.  Defendant Doe is an Administrative Law Judge of the NLRB assigned to preside over the NLRB proceeding against La Grange. An ALJ has not yet been assigned to La Grange's NLRB proceeding and the ALJ's identity is unknown. Doe is sued in his official capacity.

## FACTS

20.  Charging Party worked as a "Fractionator Operator" at the Mont Belvieu facility.

21.  On September 26, 2022, following several incidents of individualized insubordination and disruptions to facility operations, La Grange transferred Charging Party from his maintenance position as a Fractionator Operator to an operations-focused role.

22.  Charging Party did not receive any change in title, pay, benefits, or hours and Charging Party admitted the same.

23.  On November 1, 2022, Charging Party filed an unfair labor practice with the NLRB regarding the transfer.

24.  On December 7, 2022, La Grange terminated Charging Party's employment for continued individualized insubordination, disruption, and harassment of co-workers and managers via frequent electronic communications.

25. On December 9, 2022, Charging Party filed an amended unfair labor practice regarding the termination.

26. On December 19, 2022, the NLRB sought La Grange's evidence and position in response to the above-referenced charge.

27. On January 5, 2023, La Grange submitted its evidence and position statement in response.

28. On February 7, 2023, Charging Party filed a second amended charge.

29. On May 31, 2023, Charging Party filed a third amended charge.

30. Almost six months later, on November 15, 2023, the NLRB sought La Grange's supplemental position in response to the February 7 and May 31 amendments to the charge.

31. On November 20, 2023, La Grange submitted its position statement in response.

32. On March 7, 2024, the Regional Director for Region 16 of the NLRB issued a complaint and notice of hearing against La Grange. The Regional Director set the hearing to take place on July 30, 2024 at Region 16's field office in Houston, Texas. The Regional Director did not consult the Parties prior to setting the Hearing date.

33. The complaint sought—in relevant part—the following remedy: "Make the Charging Party whole for any other direct or foreseeable pecuniary harms and all reasonable consequential damages incurred as a result of Respondent's unlawful conduct, with interest calculated in accordance with Board policy[.]"

34. On March 21, 2024, La Grange answered the complaint denying all allegations.

35. On April 26, 2024, La Grange filed a motion to postpone the hearing due to pre-scheduled conflicts for undersigned counsel and La Grange's corporate representative. La Grange

asked for a three-week extension—a reasonable and brief amount of time compared to the 16 months the Region took to issue the complaint.

36. On April 26, 2024, the Regional Director denied the motion to postpone the hearing.

37. On June 24, 2024, La Grange filed its Amended Answer to the Complaint.

38. The hearing is currently set to take place on July 30, 2024.

### COUNT I – BOARD MEMBERS ARE INSULATED FROM REMOVAL IN VIOLATION OF ARTICLE II OF THE CONSTITUTION

39. La Grange incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

40. Article II of the Constitution states that the President must "take care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

41. Article II's Appointments Clause provides the President authority to appoint officers and inferior officers of the United States. *See* U.S. Const. art. II, § 2.

42. The President has the power to appoint Board Members. The NLRB consists of five Board Members.[2] With the advice and consent of the Senate, the President appoints these Board Members to staggered, five-year terms. The President designates one Board member to serve as the Chairman. *See* 29 U.S.C. § 153(a).

43. However, the NLRA limits the President's executive authority to remove Board Members. The President may only remove Board Members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." *Id.*

44. The President does not have the power to remove Board Members for other causes such as inefficiency—an unconstitutional limit on the President's power. *Id.*

---

[2] Currently, the Board only has four sitting Board members.

45. Two exceptions to the President's removal power exist: "one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law LLC v. CFPB*, 591 U.S. 197, 218 (2020); *see also Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935).

46. These exceptions do not apply here because Board Members "wield substantial executive power," and ALJs possess vast "administrative authority." *Id.*

47. The Board exerts executive authority in multiple ways. The Board has power to appoint the "executive secretary, and such attorneys, examiners, and regional directors, and other such employees as it may…find necessary for the proper performance of its duties." 29 U.S.C. § 154.

48. The Board also has the executive power to prevent any person from engaging in an unfair labor practice, issue subpoenas, engage in rulemaking, conduct union representation elections, adjudicate representation election disputes, and exercise prosecutorial power in federal district courts. *See* 29 U.S.C. §§ 156, 160.

49. The Supreme Court has made clear that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they must be exercises of—the "executive Power."'" *Seila Law LLC*, 591 U.S. at 197, n. 2.

50. But for these unlawful removal restrictions, Board Members would be subject to removal by the President.

51. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 191 (2023).

52. La Grange is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [La Grange is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 513 (2010).

53. Without interim injunctive relief, La Grange will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

54. La Grange bears a strong likelihood of success on the merits for the reasons articulated above.

55. If the NLRB is not enjoined from proceeding against La Grange in the related unfair labor practice hearing, La Grange will be irreparably harmed because it will have endured a proceeding led by Board Members who are unconstitutionally insulated from removal by the President.

56. The balance of equities tip in La Grange's favor because should the NLRB proceeding go forward, La Grange will lose its right not to undergo a constitutional proceeding, an "injury…impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enter.*, 598 U.S. at 175.

57. It is in the public interest to remedy the unconstitutional removal procedures here in order to protect Americans' constitutional rights.

**COUNT II – ADMINISTRATIVE LAW JUDGES ARE INSULATED FROM REMOVAL IN VIOLATION OF ARTICLE II OF THE CONSTITUTION**

58. La Grange incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

59. ALJs function as inferior officers of an executive agency. *See* U.S. Const. art. II, § 2; *see also Lucia v. SEC*, 138 S. Ct. 2044, 2053 (2018); *see also Westrock Servs., Inc.*, 366 NLRB No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]").

60. Inferior officers "are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy v. SEC*, 34 F.4th 446, 464 (2022).

61. The NLRB appoints ALJs, but ALJs may only be removed "for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the [Merit Systems Protection] Board." 5 U.S.C. § 7521(a).

62. Members of the Merit Systems Protection Board are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

63. "If principal officers cannot intervene in their inferior officers' actions except in rare cases, the President lacks the control necessary to ensure that the laws are faithfully executed." *Jarkesy,* 34 F.4th at 464.

64. Because ALJs can only be removed "for good cause…after opportunity for hearing," and the Merit Systems Protections Board Members who may remove ALJs are themselves removable by the President only for "inefficiency, neglect of duty, or malfeasance in office," ALJs are insulated by the President by at least two layers of for-cause removal protections. *See* 5 U.S.C. § 7521(a) and 5 U.S.C. § 1202(d).

65. ALJs are insulated by the President by at least two layers of for-cause removal protections. As the Supreme Court has held, "the added layer of tenure protection makes a difference…[a] second level of tenure protection changes the nature of the President's

review…[t]hat arrangement is contrary to Article II's vesting of the executive power in the President." *Free Enter. Fund*, 561 U.S. at 495-96.

66. But for these unlawful removal restrictions, ALJs would be subject to removal by the President.

67. The statutes' provision of at least two layers of for-cause removal protections prevents the President from exercising Presidential authority under Article II of the Constitution.

68. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191.

69. La Grange is "entitled to declaratory relief sufficient to ensure that the [administrative] standards to which [La Grange is] subject will be enforced only by a constitutional agency accountable to the Executive." *Free Enter. Fund*, 561 U.S. at 513.

70. Without interim injunctive relief, La Grange will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

71. La Grange bears a strong likelihood of success on the merits for the reasons articulated above.

72. If the NLRB is not enjoined from proceeding against La Grange in the related unfair labor practice hearing, La Grange will be irreparably harmed because it will have endured a proceeding led by officers who are unconstitutionally insulated from removal by the President.

73. The balance of equities tip in La Grange's favor because should the NLRB proceeding go forward, La Grange will lose its right not to undergo a constitutional proceeding, an "injury…impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enterp.*, 598 U.S. at 191.

74. It is in the public interest to remedy the unconstitutional removal procedures here in order to protect Americans' constitutional rights.

### COUNT III – ADMINISTRATIVE LAW JUDGES ADJUDICATE PRIVATE RIGHTS WITHOUT A JURY TRIAL IN VIOLATION OF THE SEVENTH AMENDMENT TO THE CONSTITUTION

75. La Grange incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

76. The Seventh Amendment protects the right to trial by jury. It provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. amend. VII.

77. The Supreme Court interprets "'Suits at common law' to include all actions akin to those brought at common law as those actions were understood at the time of the Seventh Amendment's adoption." *Jarkesy*, 34 F.4th at 452 (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)). Today, Supreme Court noted that the Seventh Amendment "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume." *SEC v. Jarkesy*, No. 22-859, 603 U.S. ___, slip op. at 8 (2024) (quoting *Parsons v. Bedford*, 3 Pet. 433, 447 (1830)).

78. "The term can include suits brought under a statute as long as the suit seeks common-law-like legal remedies." *Id.* (emphasis added).

79. In other words, La Grange is entitled to a jury trial if its adversary seeks *legal* relief against it. As the United States Supreme Court held today in *SEC v. Jarkesy*, No. 22-859, slip op. at 6 (2024), "it is well established that common law claims must be heard by a jury." Moreover, "[o]nce such a suit 'is brought within the bounds of federal jurisdiction,' an Article III court must

decide it with a jury if the Seventh Amendment applies." *SEC v. Jarkesy*, 603 U.S. \_\_\_, slip op. at 13 (2024) (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).

80. "Compensatory damages," or "monetary relief for all losses…sustained as a result of the alleged breach of…duties" are "the classic form of legal relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (emphasis omitted).

81. The NLRA authorized the Board to remedy unfair labor practices through an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c).

82. The statute authorizes *equitable* relief. The statute does not authorize *legal* relief—such as compensatory damages.

83. Despite this clear language, the Board has authorized its Regions to seek consequential or "compensatory" damages. *See Thryv, Inc.*, 372 NLRB No. 22 (Dec. 13, 2022) (enf. denied in part and vacated in part, *Thryv Inc., v. NLRB*, Case No. 23-60132 (5th Cir. May 24, 2024)).

84. According to the Board, these damages may include "interest and late fees on credit cards;" "credit card debt;" "early withdrawals from [a] retirement account;" compensation for the loss of a "car or [] home," if the discriminatee is unable to make loan or mortgage payments; "increased transportation or childcare costs;" or "out-of-pocket medical expenses." *Id.* at 15.

85. In an attempt to distance itself from the word "consequential" and avoid finding itself in violation of the Seventh Amendment, the Board explained:

> [W]e stress today that the Board is not instituting a policy or practice of awarding consequential damages, a legal term of art more suited for the common law of torts and contracts. Instead, we ground our decision in the make-whole principles of Section 10(c) of the Act…and our affirmative duty to rectify the harms caused by a respondent's unfair labor practice by attempting to restore the employee to the situation they would have been in but for that unlawful conduct.

12

*Id.* at 14.

86. Read differently, the Board authorized legal relief by calling it equitable relief so as to manipulate its authority.

87. The Fifth Circuit saw through the veil, referring to remedies requiring "losses incurred as a direct or foreseeable result of" the alleged unlawful action as "novel, *consequential-*damages-like labor law remed[ies]." *See Thryv Inc., v. NLRB*, Case No. 23-60132 at *9 (5th Cir. May 24, 2024) (emphasis added).

88. However, in its decision, the Fifth Circuit did not discuss whether or not the NLRB could continue to seek these novel consequential damages.

89. In its Complaint in the underlying administrative matter, the Region is seeking consequential damages of an unspecified amount against La Grange.

90. The Region continues to pursue consequential damages against employers, including La Grange.

91. The fact that the underlying administrative complaint also seeks equitable relief does not strip La Grange of its jury-trial right. *See Jarkesy*, 34 F.4th at 454 ("The Seventh Amendment applies to proceedings that involve a mix of legal and equitable claims.").

92. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191.

93. La Grange is entitled to declaratory relief to ensure that it may have the opportunity to present its case against consequential damages to a jury of its peers.

94. Without interim injunctive relief, La Grange may be ordered to pay damages to Charging Party without the appropriate safe guards a jury provides.

95. La Grange bears a strong likelihood of success on the merits for the reasons articulated above.

96. If the NLRB is not enjoined from proceeding against La Grange in the related unfair labor practice hearing, La Grange will be irreparably harmed because it may be forced to pay damages that are not permitted to be determined in a non-Article III court setting.

97. The balance of equities tips in La Grange's favor because it stands to suffer both economic and constitutional harms while Defendants stand to lose nothing.

98. It is in the public interest to remedy the Board's unconstitutional method of recovering damages from employers.

### COUNT IV – THE BOARD'S WIELDING OF EXECUTIVE, LEGISLATIVE, AND JUDICIAL AUTHORITY AND POWER VIOLATES THE FIFTH AMENDMENT TO THE CONSTITUTION

99. La Grange incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

100. The NLRB is an executive agency. 29 U.S.C § 153(a). It is not a part of the judiciary or legislature.

101. Under the Constitution, the judicial power belongs to Article III courts and cannot be shared with legislature or executive. *See Stern v. Marshall*, 564 U.S. 462, 482 (2011).

102. Under "the basic concept of the separation of powers…that flows from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States…can no more be shared with another branch than the Chief Executive…can share with the Judiciary the veto power." *Id.* at 483 (citing *United States v. Nixon*, 418 U.S. 683, 704 (1974)) (internal citations omitted).

103. However, as explained in Count III, *infra*, the Board recently took an adjudicatory role when it expanded its authority to award damages under the NLRA and made itself the body determining the amount of that award. *See Thryv, Inc.*, 372 NLRB No. 22 at 9.

104. The ability to determine the appropriate amount of legal relief belongs to a jury, the function of the judiciary, not the executive.

105. By determining the amount of direct and foreseeable pecuniary and consequential damages in La Grange's administrative proceeding, Defendants, as executives, act as the judiciary.

106. In the same vein, it acted in a quasi-legislative role when it articulated a new interpretation of Section 10(c) of the Act which expressly authorizes the Board to issue an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without back pay," and no other remedies. 29 U.S.C. § 160(c).

107. By promulgating this new remedy, the Board essentially created its own rule and its own method of determining that remedy exercising all three powers at once.

108. "An unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams v. Pennsylvania*, 579 U.S. 1, 8 (2016).

109. Being subject to illegitimate proceedings led by an illegitimate decisionmaker is a "here-and-now-injury" ripe for judicial intervention. *Axon Enter., Inc.*, 598 U.S. at 191.

110. La Grange is entitled to declaratory relief to ensure that its due process rights are not violated.

111. Without interim injunctive relief, La Grange will be required to undergo an unconstitutional proceeding before an illegitimate decisionmaker.

112. La Grange bears a strong likelihood of success on the merits for the reasons articulated above.

113. If the NLRB is not enjoined from proceeding against La Grange in the related unfair labor practice hearing, La Grange will be irreparably harmed because it will have endured a proceeding led by individuals who serve as executives, legislators, and judges in violation of the separation of powers.

114. The balance of equities tips in La Grange's favor because, should the NLRB proceeding go forward, La Grange will lose its right to undergo a constitutional proceeding, an injury "impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enter., Inc.*, 598 U.S. at 179, 192.

115. It is in the public interest to remedy the unconstitutional procedures here in order to protect Americans' constitutional rights.

## REQUEST FOR RELIEF

WHEREFORE, La Grange respectfully requests that the Court order the following relief and enter judgment:

1. Declaring that:
   a. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB ALJs, including 5 U.S.C. § 7521(a) are unconstitutional;
   b. The statutes, regulatory provisions, guidance, and/or policies restricting the removal of NLRB Members, including 29 U.S.C. § 153(a), are unconstitutional; and
   c. The NLRB proceedings against La Grange deprive it of its constitutional right to a trial by jury.

2. Preliminarily enjoining Defendants from subjecting La Grange to unconstitutionally structured administrative proceedings pending the final resolution of this action;

3. Permanently enjoining Defendants from implementing or carrying out the unconstitutional removal-protection provisions identified above;

4. Awarding La Grange its costs and expenses incurred in bringing this action, including but not limited to, reasonable attorney's fees; and

5. Awarding such other and further relief, whether at law or in equity, as the Court deems just and proper.

Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

/s/Amber M. Rogers
Amber M. Rogers
*Attorney in Charge*
Texas Bar No. 1607746
S.D. of Texas Bar No. 1607746
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
(T): 214-979-3000
(F): 214-880-0011
arogers@HuntonAK.com

Rachel E. Roney
*Of Counsel*
Texas Bar No. 24136196
S.D. of Texas Bar No. *pending*
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
(T): 214-979-3000
(F): 214-880-0011
rroney@huntonAK.com

**ATTORNEYS FOR ENERGY TRANSFER LP and LA GRANGE ACQUISITION, L.P.**