**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| ENERGY TRANSFER LP and its subsidiary and employing entity LA GRANGE ACQUISITION, L.P., | |
| Plaintiff, | |
| vs. | |
| NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. MCFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in their official capacity as an Administrative Law Judge of the National Labor Relations Board, | Civil Action No.  3:24-cv-00198 |
| Defendants. | |

## PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Energy Transfer LP ("Energy Transfer") and its subsidiary and employing entity La Grange Acquisition, L.P. ("La Grange") (referred to throughout as "La Grange"), respectfully moves for an order preliminarily enjoining the ongoing administrative proceeding against La Grange, to be entered against Defendants National Labor Relations Board ("Board" or NLRB), NLRB General Counsel Jennifer Abruzzo ("Abruzzo"), NLRB Chairperson Lauren M. McFerran ("McFerran"), Board Member Marvin E. Kaplan ("Kaplan"), Board Member Gwynne A. Wilcox ("Wilcox"), Board Member David M. Prouty ("Prouty") (McFerran, Kaplan, Wilcox, and Prouty, collectively, "Board Members"), and Administrative Law Judge John Doe ("Doe") who will soon be assigned to preside over the administrative hearing. The administrative hearing is currently set

to begin on July 30, 2024, and continue on consecutive days thereafter. Without the requested relief, La Grange will suffer irreparable harm as described below.

## I.     INTRODUCTION

"One can have a government that functions without being ruled by functionaries, and a government that benefits from expertise without being ruled by experts. Our Constitution was adopted to enable the people to govern themselves, through their elected leaders." *Free Enter. Fund v. Public Co. Accounting Oversight Bd.*, 561 U.S. 477, 499 (2010). La Grange brought suit in this Court seeking declaratory relief and to enjoin Defendants from pursuing an unconstitutionally structured administrative proceeding against it. La Grange seeks this preliminary injunction to halt the underlying administrative proceeding while its suit is pending. La Grange will be able to demonstrate that it is entitled to injunctive relief. First, it is likely to succeed on the merits of its constitutional claims that the NLRB's Board Members are unconstitutionally insulated from removal; the NLRB's ALJs are unconstitutionally insulated from removal; it is being deprived of its right to a jury trial regarding purely legal remedies sought by the NLRB; and the structure of the NLRB violates the separation of powers and La Grange's due process rights. Second, La Grange will show it is likely to suffer both economic and constitutional harms due to the damages sought against it and the very nature of the proceedings it is subject to. Third, La Grange will demonstrate that the balance of equities tips in its favor because it stands to be stripped of its constitutional rights while Defendants stand to lose nothing. Fourth and finally, it is in the public's interest to establish constitutional proceedings. Because it is likely to succeed on the merits, La Grange respectfully requests this Court grant its Motion for a Preliminary Injunction.

2

## II.     BACKGROUND

La Grange is an indirect subsidiary and employing entity of Energy Transfer.  Declaration of Sarah Ariza ("Ariza Decl."), at ¶ 6, attached as **Exhibit A**. Energy Transfer is a publicly traded limited partnership that owns and operates one of the largest and most diversified portfolios of energy assets in the United States, with a strategic footprint in all of the major domestic production basins. *Id.* at ¶ 7. Energy Transfer's core operations include complementary natural gas midstream; intrastate and interstate transportation and storage assets; crude oil, natural gas, natural gas liquids; refined product transportation and terminalling assets; NGL fractionation; and various acquisition and marketing assets. Energy Transfer has a facility in Mont Belvieu, Texas. *Id.* at ¶ 8.  Energy Transfer's fractionators at Mont Belvieu process demethanized mix received from multiple sources, including Energy Transfer's Lone Star Express, Justice, and White Cliffs pipelines as well as third-party pipelines. *Id.* at ¶ 10. The Mont Belvieu facility's storage capabilities include natural gas liquids, refined products, and specialty products. *Id.* at ¶ 11. The storage facilities are connected to third-party pipelines, refineries, petrochemical facilities, other fractionation facilities, and the Energy Transfer Nederland Terminal via its Mont Belvieu to Nederland Pipeline system. *Id.* at ¶ 12.

The Charging Party in the underlying unfair labor practice charge was employed by LaGrange and worked as a "Fractionator Operator" at the Mont Belvieu facility.[1] *Id.* at ¶ 13. On September 26, 2022, following several incidents of insubordination and disruptions to facility operations taken on his own behalf, La Grange transferred Charging Party from his maintenance position as a Fractionator Operator to an operations-focused role. *Id.* at ¶ 14. Charging Party did not receive any change in title, pay, benefits, or hours, and Charging Party admitted the same. *Id.*

---

[1] The unfair labor practice charge at issue is Case No. 16-CA-306440. La Grange will not identify Charging Party's name to maintain his privacy.

at ¶ 15. On November 1, 2022, Charging Party filed an unfair labor practice charge with the NLRB regarding the transfer alleging he was "demoted" in retaliation for engaging in protected concerted activity. Declaration of Amber Rogers ("Rogers Decl."), at ¶ 4, attached as **Exhibit B**. On December 7, 2022, La Grange terminated Charging Party's employment for continued insubordination, disruption, and harassment of co-workers and managers via frequent electronic communications. Ariza Decl., at ¶ 16.  He did not take these actions on behalf of any co-workers; this was individualized behavior relating only to the Charging Party. *Id.* at ¶ 18. On December 9, 2022, Charging Party filed an amended unfair labor practice charge regarding the termination claiming his employment was terminated in retaliation for engaging in protected concerted activity and for filing an unfair labor practice charge. Rogers Decl., at ¶ 6. On December 19, 2022, the NLRB sought La Grange's evidence and position in response to the above-referenced charges. *Id.* at ¶ 7. On January 5, 2023, La Grange submitted its evidence and position statement in response. *Id.* at ¶ 8. On February 7, 2023, Charging Party filed a second amended charge. *Id.* at ¶ 9. On May 31, 2023, Charging Party filed a third amended charge. *Id.* at ¶ 10. Almost six months later, on November 15, 2023, the NLRB sought La Grange's supplemental position in response to the February 7 and May 31 amended charges. *Id.* at ¶ 11. On November 20, 2023, La Grange submitted its position statement in response. *Id.* at ¶ 12.

In late December 2023, a NLRB Field Attorney in Region 16 informed La Grange that the Region found merit to the unfair labor practice charge and would draft a proposed settlement agreement. *Id.* at ¶ 13.  Throughout discussions, La Grange was informed that Charging Party demanded *over $150,000* in back pay and consequential damages.[2] *Id.* at ¶ 14. Part of the consequential damages calculation included damages to compensate the Charging Party for the

---

[2] The monetary awards included in proposed settlements at the NLRB are rarely, if ever, negotiable, and they accrue by the day until the Parties come to a resolution. Even today, the back pay and damages amount continues to accrue.

sale of his home that he allegedly lived in for decades. *Id.* at ¶ 15. Charging Party claimed he had to sell his house at a loss as a result of losing his job. *Id.* at ¶ 16. La Grange is unaware of any proof Charging Party provided to the Region to conjure up this number. *Id.* at ¶ 17. La Grange did not agree to the settlement. *Id.* at ¶ 18.

Three months later, on March 7, 2024, the Regional Director for Region 16 issued a complaint and notice of hearing against La Grange. *Id.* at ¶ 19. The Regional Director set the hearing to take place on July 30, 2024 at Region 16's field office in Houston, Texas. *Id.* at ¶ 20. The Regional Director did not consult the Parties prior to setting the Hearing date. *Id.* at ¶ 21. The complaint sought—in relevant part—the following remedy: "Make the Charging Party whole for any other direct or foreseeable pecuniary harms and all reasonable consequential damages incurred as a result of Respondent's unlawful conduct, with interest calculated in accordance with Board policy[.]" *Id.* at ¶ 23. On March 21, 2024, La Grange answered the complaint denying all allegations. *Id.* at ¶ 24. On April 26, 2024, La Grange filed a Motion for Postponement of Hearing due to pre-scheduled conflicts for undersigned counsel and La Grange's corporate representative. *Id.* at ¶ 25. La Grange asked for a three-week extension—a reasonable and brief amount of time compared to the 16 months the Region took to issue the complaint. *Id.* at ¶ 26. On April 26, 2024, the Regional Director denied the Motion for Postponement of Hearing. *Id.* at ¶ 27. The hearing is currently set to take place on July 30, 2024. *Id.* at ¶ 28.

## III.   ARGUMENT

To obtain a preliminary injunction, La Grange must show: (1) it is likely to succeed on the merits of its constitutional claims; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in

the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). La Grange
will succeed on all four elements.

A. **La Grange is likely to succeed on the merits of the constitutional claims.**

1. **NLRB Board Members are unconstitutionally insulated from removal.**

Article II of the Constitution states that the President must "take care that the Laws be
faithfully executed." U.S. Const. art. II, § 3, cl. 3. The President has the power to appoint NLRB
Board members. *See* 29 U.S.C. § 153(a). The NLRB consists of five Board members. *Id.* With the
advice and consent of the Senate, the President of the United States appoints these Board members
to staggered, five-year terms. The President designates one Board member to serve as the
Chairman. *Id.* Article II requires the President to maintain "unrestricted removal power" over all
federal officials "who wield executive power," subject to two potential exceptions. *Seila Law LLC
v. CFPB*, 591 U.S. 197, 204 (2020). However, under the NLRA, the President may only remove
Board members "upon notice and hearing, for neglect of duty or malfeasance in office, but for no
other cause." 29 U.S.C. § 153(a). These limitations restrict the President's "unrestricted removal
power" guaranteed by Article II. *Seila Law LLC*, 591 U.S. at 204.

Board members are only removable "for neglect of duty or malfeasance in office," but not
for other causes like inefficiency, which is unconstitutional. *See* 29 U.S.C. § 153(a). The Supreme
Court has found this type of restriction on the President's power to be unconstitutional. *See Collins
v. Yellen*, 141 S. Ct. 1761, 1787 (2021) ("The President must be able to remove not just officers
who disobey his commands but also those he finds 'negligent and inefficient[.]'" (quoting *Myers
v. United States*, 272 U.S. 52, 135 (1926)). Moreover, in *Seila Law*, the Supreme Court specifically
held that "the [Consumer Financial Protection Bureau]'s leadership by a single individual

removable only for inefficiency, neglect, or malfeasance violates the separation of powers." *Seila Law*, 591 U.S. at 213.

In *Humphrey's Executor v. U.S.*, 295 U.S. 602 (1935), the United States Supreme Court held that there are two exceptions to the President's removal power: "one for multimember expert agencies that do not wield substantial executive power, and one for inferior officers with limited duties and no policymaking or administrative authority." *Seila Law*, 591 U.S. at 218. The *Humphrey's Executor* exceptions do not apply here because NLRB Board members "wield substantial executive power," and ALJs possess vast "administrative authority." *Id.*

The Board Members exert executive power in multiple ways. The Board has power to appoint the "executive secretary, and such attorneys, examiners, and regional directors, and other such employees as it may…find necessary for the proper performance of its duties." 29 U.S.C. § 154. The Board also has the executive power to prevent any person from engaging in an unfair labor practice, issue subpoenas, engage in rulemaking, conduct union representation elections, adjudicate representation election disputes, and exercise prosecutorial power in federal district courts. *See* 29 U.S.C. § 156, 160. The Supreme Court has made clear that even when "the activities of administrative agencies 'take "legislative" and "judicial" forms,' 'they are exercises of—indeed, under our constitutional structure they must be exercises of—the "executive Power.'" *Seila Law*, 591 U.S. at 216 n.2. Because Board Members exert executive authority, the President must be able to remove them without barriers.

The Supreme Court recognizes this removal power is impermissibly restrained by statutes that limit the President's ability to remove an executive official, either by restricting who can remove, or limiting the rationale for removal. *See Free Enterprise Fund*, 561 U.S. at 495; *Seila Law*, 591 U.S. at 205; *Collins v. Yellen*, 141 S. Ct. at 1783-84. For example, in *Free Enterprise*

*Fund*, the Court invalidated a for-cause removal restriction on the members of the Public Company Accounting Oversight Board. 561 U.S. at 495–96. The officers in question could be removed only for cause by officers of the Securities and Exchange Commission, who in turn could be removed only for cause by the President. The Court held that this removal restriction "subvert[ed] the President's ability to ensure that the laws are faithfully executed" and was thus "incompatible with the Constitution's separation of powers." *Id*. at 498. Indeed, the Supreme Court stated:

> No one doubts Congress's power to create a vast and varied federal bureaucracy. But where, in all this, is the role for oversight by an elected President? The Constitution requires that a President chosen by the entire Nation oversee the execution of the laws. And the 'fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution,' for '[c]onvenience and efficiency are not the primary objectives—or the hallmarks—of democratic government.'"

*Free Enter. Fund*, 561 U.S. at 499 (citing *Bowsher v. Synar*, 478 U.S. 736 (1986)) (quoting *I.N.S. v. Chadha*, 462 U.S. 919, 944 (1983))).

Due to these statutory restrictions, the President does not have unfettered power to remove NLRB Board members in violation of Article II of the Constitution.

### 2.   NLRB ALJs are unconstitutionally insulated from removal.

Article II's Appointments clause also provides the President authority to appoint officers and inferior officers of the United States. *See* U.S. Const. art. II, § 2. ALJs function as inferior officers of an executive agency. *See* U.S. Const. art. II, § 2; *see also Lucia v. SEC*, 138 S. Ct. 2044, 2053 (2018); *see also Westrock Servs., Inc.*, 366 NLRB No. 157, slip op. at 1 (Aug. 6, 2018) ("Board judges, like SEC judges, are inferior officers[.]"). Inferior officers "are sufficiently important to executing the laws that the Constitution requires that the President be able to exercise authority over their functions." *Jarkesy v. SEC*, 34 F.4th 446, 464 (2022). The NLRB appoints ALJs, but ALJs may only be removed "for good cause established and determined by the Merit

Systems Protection Board on the record after opportunity for hearing before the [Merit Systems Protection] Board." 5 U.S.C. § 7521(a). Members of the Merit Systems Protection Board ("MSPB") are removable only for "inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d). "If principal officers cannot intervene in their inferior officers' actions except in rare cases, the President lacks the control necessary to ensure that the laws are faithfully executed." *Jarkesy*, 34 F.4th at 464.

Based on relevant Fifth Circuit precedent, La Grange is likely to succeed on the merits of its constitutional challenge concerning the NLRB ALJ's removal process. In *Jarkesy*, the Fifth Circuit found the SEC's ALJs unconstitutionally insulated from at least two layers of removal protection. 34 F.4th at 465. The SEC ALJs are also removable by the MSPB. *Id.* If the MSPB finds good cause to remove an SEC ALJ, the Commission must then choose to act on that finding. *Id.* Both the MSPB and the Commission members also have for-cause removal protection from the President. *Id.* This structure, which was found unconstitutional by the Fifth Circuit, is nearly identical to NLRB ALJs.

The statutes' provision of at least two layers of for-cause removal protections prevents the President from exercising Presidential authority under Article II of the Constitution. Because ALJs can only be removed "for good cause…after opportunity for hearing," and the Merit Systems Protections Board Members who may remove ALJs are themselves removable by the President only for "inefficiency, neglect of duty, or malfeasance in office," ALJs are insulated by the President by at least two layers of for-cause removal protections. As the Supreme Court has held, "the added layer of tenure protection makes a difference…[a] second level of tenure protection changes the nature of the President's review…[t]hat arrangement is contrary to Article II's vesting

of the executive power in the President." *Free Enter. Fund*, 561 U.S. at 495-96. Therefore, relevant

and binding Supreme Court precedent requires that La Grange succeed on its claim.

### 3. The NLRB's adjudication of private rights and legal relief violates the Seventh Amendment.

The NLRB is statutorily limited to providing public relief to aggrieved parties, but the

NLRB recently authorized Regions to seek "private relief," which must be determined by a jury.

*See Thryv, Inc.*, 372 NLRB No. 22 at *13-14 (Dec. 13, 2022), enf. denied in part and vacated in

part *Thryv, Inc., v. NLRB*, Case No. 23-60132 (5th Cir. May 24, 2024))

The Seventh Amendment protects the right to trial by jury. Specifically, it provides that

"[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right

of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any

Court of the United States, than according to the rules of the common law." U.S. Const. amend.

VII. The Supreme Court interprets "'Suits at common law' to include all actions akin to those

brought at common law as those actions were understood at the time of the Seventh Amendment's

adoption." *Jarkesy*, 34 F.4th at 452 (citing *Tull v. United States*, 481 U.S. 412, 417 (1987)). "The

term can include suits brought under a statute as long as the suit seeks common-law-like *legal*

remedies." *Id.* (emphasis added). These cases seeking legal relief "must be tried under the auspices

of an Article III Court." *Granfinanciera, S.A. v. Nordberry*, 492 U.S. 33, 41 (1989). In other words,

La Grange is entitled to a jury trial if its adversary seeks *legal* relief against it. "Compensatory

damages," or "monetary relief for all losses…sustained as a result of the alleged breach

of…duties" are "the classic form of legal relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255

(1993) (emphasis omitted).

The NLRA only provides for equitable relief. The NLRA authorized the Board to remedy

unfair labor practices through an "order requiring [the] person to cease and desist from such unfair

labor practice, and to take…affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c) ("Section 10(c)"). Almost 100 years ago, the Supreme Court permitted only reinstatement and backpay under Section 10(c). The Supreme Court reasoned, "because claims seeking statutory remedies for violations of the Act were 'statutory proceedings' that were 'unknown to the common law,' they were not 'suits at common law' within the meaning of the Seventh Amendment." C. Nelson, *Adjudication in the Political Branches*, 107 Colum. L. Rev. 559, 569 (2007) (quoting *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937)). Therefore, the NLRB could continue acting as a factfinder as to claims for monetary relief because the NLRA itself permitted this relief. However, the holding in *Jones & Laughlin Steel Corp.* did not consider far-reaching consequential damages. The Supreme Court explained, "Reinstatement of the employee and payment for time lost are requirements imposed for violation of the statute and are remedies appropriate to its enforcement." 310 U.S. at 48-49.

The Board and its rulemaking agenda has since evolved. Here, the NLRB seeks damages against La Grange far beyond what is authorized by statute and the Constitution. The purpose of Section 10(c) is to make an aggrieved party whole. The statute authorizes *equitable* relief. The statute does not authorize *legal* relief—such as compensatory damages. Despite this clear language, and the fact that the Board directly acknowledged legal damages as "more suited for the common law of torts and contracts," the Board has authorized its Regions to seek consequential or "compensatory" damages. *See Thryv, Inc.*, 372 NLRB No. 22 at *13-14. According to the Board, the consequential damages it permits may include "interest and late fees on credit cards;" "credit card debt;" "early withdrawals from [a] retirement account;" compensation for the loss of a "car or [] home," if the discriminatee is unable to make loan or mortgage payments; "increased transportation or childcare costs;" or "out-of-pocket medical expenses." *Id.* at *9. In an attempt to

distance itself from the word "consequential" and avoid finding itself in a battle between public and private rights, the Board explained:

> [W]e stress today that the Board is not instituting a policy or practice of awarding consequential damages, a legal term of art more suited for the common law of torts and contracts. Instead, we ground our decision in the make-whole principles of Section 10(c) of the Act…and our affirmative duty to rectify the harms caused by a respondent's unfair labor practice by attempting to restore the employee to the situation they would have been in but for that unlawful conduct.

*Id.*

Read differently, the Board authorized legal relief by calling it equitable relief so as to stretch its authority. However, as the Supreme Court stated, "[l]iability of one individual to another under the law" is a matter "of private right. *Stern v. Marshall*, 564 U.S. 462, 489 (2011). The Fifth Circuit saw through the veil, referring to remedies requiring "losses incurred as a direct or foreseeable result of" the alleged unlawful action as "novel, *consequential*-damages-like labor law remed[ies]." *See Thryv Inc*, Case No. 23-60132 at *9 (emphasis added). However, in its decision, the Fifth Circuit did not discuss whether the NLRB could continue to seek these novel consequential damages. Therefore, the compensatory damages plague continues to unconstitutionally threaten La Grange.[3]

Only a few days ago, the Supreme Court signaled agreement with La Grange. On June 27, 2024, the Supreme Court held in *SEC v. Jarkesy*, No. 22-859, slip op. at 6 (2024), "it is well established that common law claims must be heard by a jury." Moreover, "[o]nce such a suit 'is

---

[3] Similarly, the Supreme Court has held that Title VII, which "focuses on legal injuries of an economic character" and the "remedy, correspondingly, consists of restoring victims, through backpay awards and injunctive relief, to the wage and employment positions they would have occupied absent the unlawful discrimination." *United States v. Burke*, 504 U.S. 229, 239 (1992) (internal citation omitted). In *Burke*, the Supreme Court further held, "nothing in this remedial scheme purports to recompense a Title VII plaintiff for any of the other traditional harms associates with personal injury, such as…other consequential damages (*e.g.*, a ruined credit rating)." Moreover, as noted by a sister court, "courts [have] commonly found that such relief [consequential damages] was purely equitable." *Murray v. TXU Corp.*, 2005 WL 1356444, at *3 (N.D. Tex. 2005).

brought within the bounds of federal jurisdiction,' an Article III court must decide it with a jury if the Seventh Amendment applies." *SEC v. Jarkesy*, 603 U.S. ___, slip op. at 13 (2024) (quoting *Stern v. Marshall*, 564 U.S. 462, 484 (2011)).

In its Complaint in the underlying administrative matter, the General Counsel explicitly sought "consequential damages"[4] against La Grange; the very same damages the Board attempted to argue it was not authorizing in *Thryv*. The Region continues to pursue consequential damages against employers, including La Grange. La Grange will suffer irreparable harm if it is found to have violated the Act and is ordered to pay the Charging Party impermissible consequential damages.

### 4. NLRB Members' wielding of executive, judicial, and legislative functions violates the separation of powers and due process.

The NLRB is an executive agency tasked with making factual determinations in administrative proceedings. This executive power should not and does not extend to adjudication. However, the Board has taken it upon itself to adjudicate private rights, a power intended for the judiciary rather than the executive.

Under the Constitution, the judicial power belongs to Article III courts and cannot be shared with legislature or executive. *See Stern*, 564 U.S. at 482. Under "the basic concept of the separation of powers…that flows from the scheme of a tripartite government adopted in the Constitution, the judicial Power of the United States…can no more be shared with another branch than the Chief Executive…can share with the Judiciary the veto power." *Id.* at 483 (citing *United States v. Nixon*, 418 U.S. 683, 704 (1974) (internal citations omitted). However, "[t]he National

---

[4] *See Minneapolis & St. L. Ry. Co. v. Emmons*, 149 U.S. 364, 367 (1893) (noting "[i]t was entirely competent for the legislature to subject the company to any incidental or consequential damages, such as the loss of rent…) *Christopher Francois Living Trust v. Great Lakes Ins.*, 2003 WL 6284455, at *3 (W.D. La 2023) (noting "plaintiff clarifies that it is seeking record of lost rent as a consequential damage…").

Labor Relations Board, uniquely among major federal administrative agencies, has chosen to promulgate virtually all the legal rules in its field through adjudication rather than rulemaking." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998).

There is no more timely example of breaching the separation of powers than *Thryv*. The Board—an executive agency—explicitly determined that it would adjudicate private rights—a judicial function. As explained above, Section 10(c) expressly authorizes the Board to issue an "order requiring [the] person to cease and desist from such unfair labor practice, and to take…affirmative action including reinstatement of employees with or without back pay." 29 U.S.C. § 160(c). Based on the "including" language here, the Board in *Thryv* determined that consequential remedies—remedies determined and calculated by the Board's compliance office—may be issued without a jury trial. 372 NLRB No. 22 at 9. The Board here took statutory interpretation too far and created an "unconstitutional delegation." *Nat'l Fed. of Indep. Bus. V. OSHA*, 595 U.S. 109, 126 (2022) (Gorsuch, J., concurring). In doing so, the Board also exhibited its quasi-legislative conduct when it articulated a new interpretation of Section 10(c).

As Justice Thomas explained in his concurrence in *Axon Enterprises, Inc.*, "[i]t may violate the separation of powers by placing adjudicatory authority over core private rights—a judicial rather than executive power—within the authority of Article II agencies." *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 202 (2023) (Thomas, concurring) (quoting *B&B Hardware, Inc. v. Hargis Industries, Inc.*, 575 U.S. 138, 171 (2015) (Thomas, dissenting)).

Adding insult to injury, the Board in *Thryv* also expressly permitted "foreseeable" pecuniary harms and not just those readily calculable. In her complaint against La Grange, the General Counsel seeks "foreseeable" damages against La Grange. As Board Members Kaplan and Ring stated in their dissent in part:

14

> On its face, this standard would permit recovery for any losses indirectly caused by an unfair labor practice, regardless of how long the chain of causation may stretch from unfair labor practice to loss, whenever the loss is found to be foreseeable. In our view, this standard opens the door to awards of speculative damages that go beyond the Board's remedial authority.

*Thryv Inc.*, 372 NLRB No. 22 at 16 (Ring and Kaplan dissenting). Members Ring and Kaplan even acknowledged, "[w]e further observe that the Board faces potential Seventh Amendment issues if it strays into areas more akin to tort remedies. Those concerns also militate against the majority's 'direct or foreseeable' standard." *Id.* By creating this new remedy, the Board essentially created its own rule and its own method of determining that remedy; the Board is exercising all three powers at once.

Even if this Court agrees that the word "including" in the statute permits make whole remedies beyond back pay and reinstatement, the "foreseeable" damages fall outside of that bucket. Foreseeable damages are a core element of tort law. *See Palsgraf v. Long Island Railroad*, 248 N.Y. 339, 162 N.E. 99 (1928). The Board's dictation of foreseeable damages as equitable relief under Section 10(c) is not only blatantly incorrect, but a direct abuse of its executive power. The statute authorized make whole remedies in order to restore the aggrieved party to the status quo. The statute did not authorize the NLRB to put the aggrieved party in a *better position* than he would had he not suffered an adverse employment action; a position created by "foreseeable" pecuniary damages. The Board has gone beyond its executive function and outright created its own rule to adjudicate in its own forum.

The Board's blatant ignorance of the separation of powers violates La Grange's due process to a fair hearing and will cause irreparable harm.

### B.  La Grange will suffer irreparable harm without a preliminary injunction.

La Grange will suffer immediate and irreparable harm absent injunctive relief. "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Med. Ctr. v.*

*City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). "It is well settled that the loss of [constitutional] freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction." *Id.* (citing *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also BST Holdings, LLC v. OSHA*, 17 F.4th 604 (5th Cir. 2021) ("[T]he loss of constitutional freedoms for even minimal periods of time…unquestionably constitutes irreparable injury.") (internal citations omitted). Where a constitutional right is "either threatened or in fact being impaired at the time relief was sought," preliminary injunctive relief is appropriate. *Elrod*, 427 U.S. at 374.

The Supreme Court recognized this in *Axon.* In *Axon*, the plaintiffs sought to enjoin Federal Trade Commission ("FTC") and Securities and Exchange Commission ("SEC") enforcement proceedings by challenging the constitutionality of tenure protection for the FTC's and SEC's ALJs. *Axon Enterp.*, 598 U.S. at 179. In doing so, the Court recognized that the "harm" of "'being subjected' to 'unconstitutional agency authority'—'a proceeding by an unaccountable ALJ'" is an "abstract" harm, but nonetheless a "here-and-now injury." *Id.* at 191. This type of claim is a "here and now injury" because "it is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id.* Were the "illegitimate proceeding before an illegitimate decisionmaker" to go forward, "structural constitutional claims would come too late to be meaningful." *Id.* Should the NLRB proceeding go forward, La Grange will lose its right not to undergo an unconstitutional proceeding, an "injury…impossible to remedy once the proceeding is over," and "judicial review of [its] structural constitutional claims would thus come too late to be meaningful." *Axon Enterp.*, 598 U.S. at 175.

La Grange also stands to suffer economic harm from the unconstitutional proceedings. Because the Board has unilaterally created a rule requiring Respondents to compensate aggrieved

parties for "direct and foreseeable" consequential damages, La Grange has limited insight into its liability. Most recently, in December 2023, Region 16 demanded over $150,000 from La Grange. ( ) La Grange is not aware of the evidence the Region used to conclude that $150,000 is an appropriate amount of consequential damages. ( ) The calculation will only continue to rise as La Grange moves towards the Hearing date. Thus, the NLRB's attempt to deprive La Grange of its constitutional right to a jury trial also cannot be remedied after the proceedings occur. *Axon Enterp.*, 598 U.S. at 175.

La Grange faces irreparable constitutional and economic harm should this Hearing move forward.

### C. The balance of equities tips in La Grange's favor and an injunction is in the public interest.

Measuring the harm against Defendants, the balance of equities tips strongly in La Grange's favor. Where "the Government is the opposing party," the "harm to the opposing party and the public interest" factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). La Grange is likely to succeed on the merits of it claims. Without an injunction, La Grange stands to lose a fair Hearing with judges and Board Members who are insulated from Presidential removal, and a Hearing in front of an agency violating the separation of powers. Because the General Counsel also seeks consequential damages "direct or foreseeable," La Grange may be deprived of its opportunity to present a case regarding appropriate damages to a jury of its peers.

Defendants, on the other hand, would not be harmed if this injunction is granted. A preliminary injunction will do the NLRB "no harm whatsoever." *BST Holdings, LLC*, 17 F.4th at 618. "Any interest [the NLRB] may claim in enforcing an unlawful (and likely unconstitutional) proceeding is "illegitimate." *Id.*; *see also Lujan v. U.S. Dep't of Educ.*, 664 F.Supp.3d 701, 722

(W.D. Tex. 2023) ("Finally, and most importantly, the Department has no interest in enforcing a regulation that likely conflicts with Congress's unambiguous statutory mandate.").

Because of the "economic uncertainty" and constitutional violations at stake, a preliminary injunction is also in the public interest. *Id.* "The public interest is…served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions—even, or perhaps *particularly*, when those decisions frustrate government officials." *Id.* at 618-19 (emphasis in original).

Even if the Court grants this preliminary injunction, but determines the NLRB's proceedings are constitutional, Defendants could move forward with the unfair labor practice proceedings at that time. Region 16 waited nearly 16 months to issue a Complaint in the underlying unfair labor practice. This preliminary injunction would merely require the NLRB to stay the unfair labor practice proceedings while this Court makes its determination. While La Grange may suffer economic losses and constitutional deprivation, the Defendants simply do not stand to lose anything.

## IV.    CONCLUSION

For the foregoing reasons, La Grange respectfully requests the Court to enter a preliminary injunction against the NLRB's ongoing administrative proceeding against La Grange.

Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

*/s/Amber M. Rogers*
Amber M. Rogers, Attorney in Charge
Texas Bar No. 1607746
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
(T): 214-979-3000
(F): 214-880-0011
arogers@HuntonAK.com

Rachel E. Roney, Associate
Texas Bar No. 24136196
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202-2799
(T): 214-979-3000
(F): 214-880-0011
rroney@huntonAK.com

**ATTORNEYS FOR ENERGY TRANSFER LP
and LA GRANGE ACQUISITION, L.P.**

## <u>CERTIFICATE OF CONFERENCE</u>

Pursuant to Local Rule 7.1(d), I hereby certify that on July 1, 2024, I conferred with counsel for the Defendants via email, who represented that Defendants oppose the foregoing motion.

*/s/Amber M. Rogers*
Amber M. Rogers

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and exact copy of the foregoing document was electronically filed through the court's e-filing system on all Parties on this 3rd day of July 2024.

*/s/Amber M. Rogers*
Amber M. Rogers