# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | |
|---|---|
| ENERGY TRANSFER LP and its subsidiary and employing entity LA GRANGE ACQUISITION, L.P., <br><br>       Plaintiff, <br><br>   v. <br><br> NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board, <br><br>       Defendants. | Case No. 3:24-cv-00198-JVB |

# DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

**BACKGROUND** ................................................................................................. 1

  I. Statutory and regulatory background ........................................................ 1

  II. Procedural history ................................................................................... 4

**LEGAL STANDARD** ........................................................................................ 6

**ARGUMENT** ...................................................................................................... 7

  I. La Grange is not likely to succeed on any of its claims. ........................... 7

    A. La Grange cannot succeed on either of its removal-based constitutional claims because it fails to allege prejudicial harm and, in any event, removal protections for those officials are constitutional. ....................................... 7

      1. La Grange's failure to allege causal harm from either Board members' or NLRB ALJs' removal protections is fatal to its removal claims. ...................... 8

      2. Preliminary injunctive relief is unavailable where severance can resolve the threat of appearing before an unconstitutionally insulated adjudicator. ... 11

      3. Removal protections for NLRB Board members are constitutional under *Humphrey's Executor* and Fifth Circuit law. .................................................. 13

      4. Removal protections for NLRB ALJs are also constitutional. ..................... 17

    B. La Grange's Seventh Amendment claim is beyond this Court's subject-matter jurisdiction and contrary to controlling law. ......................................... 18

    C. La Grange is not likely to establish district court jurisdiction over nor prevail on its combined-functions claim. ................................................................ 24

  II. La Grange has not met its burden to show irreparable harm arising from the alleged constitutional infirmities it identifies. ............................................. 26

    A. La Grange has not shown any irreparable harm resulting from removal protections for NLRB ALJs or Board members. ......................................... 27

    B. La Grange's Seventh Amendment and combination of functions claims are too speculative to be a basis for irreparable harm. ...................................... 27

    C. La Grange's alleged economic harm is insufficient to establish a right to preliminary injunctive relief. ....................................................................... 29

  III. The balance of the equities and the public interest factors counsel against granting a preliminary injunction. .............................................................. 29

  **CONCLUSION** ................................................................................................ 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agwilines, Inc. v. NLRB*,
 87 F.2d 146 (5th Cir. 1936) ................................................................ 15, 22, 28

*Anibowei v. Morgan*,
 70 F.4th 898 (5th Cir. 2023) ......................................................................... 6

*Axon Enterprise Inc. v. FTC*,
 598 U.S. 175 (2023) ............................................................................. passim

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
 591 U.S. 610 (2020) ..................................................................................... 11

*Benisek v. Lamone*,
 585 U.S. 155 (2018) ....................................................................................... 7

*Bokat v. Tidewater Equip. Co.*,
 363 F.2d 667 (5th Cir. 1966) ....................................................................... 20

*BST Holdings, LLC v. OSHA*,
 17 F.4th 604 (5th Cir. 2021) ....................................................................... 30

*Burgess v. FDIC*,
 639 F. Supp. 3d 732 (N.D. Tex. 2022) ........................................................ 10

*Calcutt v. FDIC*,
 37 F.4th 293 (6th Cir. 2022) ............................................................ 9, 10, 18

*Care One, LLC v. NLRB*,
 2023 WL 6457641 (D. Conn. Oct. 4, 2023) ................................................ 10

*CashCall, Inc.*,
 35 F.4th 734 (9th Cir. 2022) ......................................................................... 9

*Chacon v. Granata*,
 515 F.2d 922 (5th Cir. 1975) ....................................................................... 28

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
 51 F.4th 616 (5th Cir. 2022) ............................................................ 8, 9, 10

*Collins v. Dep't of the Treasury*,
    83 F.4th 970 (5th Cir. 2023) ................................................................ 8, 9, 11

*Collins v. Yellen*,
    594 U.S. 220 (2021) ...................................................................... passim

*Consumers' Rsch. v. Consumer Prod. Safety Comm'n*,
    91 F.4th 342 (5th Cir. 2024) ........................................................ passim

*Decker Coal v. Pehringer*,
    8 F.4th 1123 (9th Cir. 2021) ...................................................................... 18

*Dish Network Corp. v. NLRB*,
    953 F.3d 370 (5th Cir. 2020) ................................................................ 3, 16

*Def. Distributed v. United States Dep't of State*,
    838 F.3d 451 (5th Cir. 2016) ...................................................................... 29

*Elgin v. Dep't of Treasury*,
    567 U.S. 1 (2012) ...................................................................... 19

*Exela Enter. Sols. v. NLRB*,
    32 F.4th 436 (5th Cir. 2022) ................................................................ 16, 25

*Fibreboard Paper Prods. Corp. v. NLRB*,
    379 U.S. 203 (1964) ...................................................................... 2, 3

*Foster v. Wilson*,
    504 F.3d 1046, 1050 (9th Cir. 2008) ...................................................................... 21

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ...................................................................... passim

*HHS v. Jarboe*,
    2023 MSPB 22 (Aug. 2, 2023) ...................................................................... 4

*Humphrey's Ex'r v. United States*,
    295 U.S. 602 (1935) ...................................................................... passim

*Illumina, Inc. v. FTC*,
    88 F.4th 1036 (5th Cir. 2023) ................................................................ 14, 25

*In re Chocallo*,
    1 MSPR 605 (1980) ...................................................................... 4

*Integrity Advance, LLC v. CFPB,*
    48 F.4th 1161 (10th Cir. 2022) ......................................................................... 9

*Jarkesy v. Securities and Exchange Commission,*
    51 F.4th 644 (5th Cir. 2022) ................................................................. 7, 17, 20

*Securities and Exchange Commission v. Jarkesy,*
    2024 WL 3187811 (U.S. June 27, 2024) ................................................... passim

*K & R Contractors, LLC v. Keene,*
    86 F.4th 135 (4th Cir. 2023) ............................................................................ 9

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
    335 F.3d 357 (5th Cir. 2003) ........................................................................... 6

*Kim v. FINRA,*
    2023 WL 6538544 (D.D.C. Oct. 6, 2023) ...................................................... 26

*L. Offs. of Crystal Moroney, P.C.,*
    63 F.4th 174 (2d Cir. 2023) ........................................................................ 9, 10

*Leachco, Inc. v. Consumer Prod. Safety Comm'n,*
    2023 WL 4934989 (E.D. Okla. Aug. 2, 2023) ................................................ 10

*Leachco, Inc. v. Consumer Prod. Safety Comm'n,*
    103 F.4th 748, 757 (10th Cir. 2024) .................................................. 10, 18, 26

*League of United Latin Am. Citizens v. Abbott,*
    601 F. Supp. 3d 147 (W.D. Tex. 2022) ......................................................... 30

*Lee Brass Co.,*
    316 NLRB 1122 (1995) .................................................................................. 28

*Lewis v. Casey,*
    518 U.S. 343 (1996) ....................................................................................... 13

*M. D. ex rel. Stukenberg v. Abbott,*
    907 F.3d 237 (5th Cir. 2018) ......................................................................... 29

*Mertens v. Hewitt Assocs.,*
    508 U.S. 248 (1993) ....................................................................................... 24

*Meta Platforms, Inc. v. FTC,*
    2024 WL 1121424 (Mar. 15, 2024) .......................................................... 26, 27

iv

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
  760 F.2d 618 (5th Cir. 1985) ............................................................................ 27

*Morrison v. Olson*,
  487 U.S. 654 (1988) ..................................................................................... 18,

*Munaf v. Geren*,
  553 U.S. 674 (2008) ........................................................................................ 6

*Myers v. United States*,
  272 U.S. 52 (1926) ........................................................................................ 18

*Nathanson v. NLRB*,
  344 U.S. 25 (1953) ........................................................................................ 30

*Nat'l Licorice Co. v. NLRB*,
  309 U.S. 350 (1940) ................................................................................. 21, 30

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................ 7

*NLRB v. Bell Aerospace Co.*,
  416 U.S. 267 (1974) ...................................................................................... 25

*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937) ................................................................................... passim

*Phelps Dodge Corp. v. NLRB*,
  313 U.S. 177 (1941) ............................................................................. 3, 19, 25

*Republic Steel Corp. v. NLRB*,
  311 U.S. 7 (1940) ......................................................................................... 15

*Schlesinger v. Reservists Comm. to Stop the War*,
  418 U.S. 208 (1974) ...................................................................................... 12

*Seila Law LLC v. Consumer Finance Protection Bureau*,
  591 U.S. 197 (2020) ..................................................................... 11, 12, 13, 15

*Sheffield v. Bush*,
  604 F.3d 586 (S.D. Tex. 2022) ........................................................................ 26

*Space Expl. Techn. Corp. v. Bell*,
  2023 WL 8885128 (S.D. Tex. Nov. 8, 2023) ............................................... 10, 13

v

*Tex. Alliance for Ret. Ams. v. Hughs*,
   976 F.3d 564 (5th Cir. 2020) ........................................................................ 29

*Thryv, Inc.*,
   372 NLRB No. 22 (2022),
   *enf. denied on other grounds,* 102 F.4th 727 (5th Cir. 2024) ......................... 3

*U.A.W. Local 283 v. Scofield*,
   382 U.S. 205 (1965) ...................................................................................... 29

*United States v. Perkins*,
   116 U.S. 483 (1886) ...................................................................................... 18

*Va. Elec. & Power Co. v. NLRB*,
   319 U.S. 533 (1943) ................................................................................ 21, 25

*Valentine v. Collier*,
   956 F.3d 797 (5th Cir. 2020) ........................................................................ 29

*WestRock Servs., Inc.*,
   366 NLRB No. 157 (2018) .............................................................................. 2

*White v. Carlucci*,
   862 F.2d 1209 (5th Cir. 1989) .................................................................. 6, 25

*Wiener v. United States*,
   357 U.S. 349 (1958) ...................................................................................... 18

*Wilson v. Off. of Violent Sex Offender Mgmt.*,
   584 F. App'x 210 (5th Cir. 2014) (mem.) ...................................................... 6

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ...................................................................................... 6, 28

**Statutes**

5 U.S.C. § 1202 ................................................................................................. 4

5 U.S.C. § 3105 ................................................................................................. 2

5 U.S.C. § 7521 ............................................................................................ 3, 11

15 U.S.C. § 2053 ............................................................................................. 14

15 U.S.C. § 2056 ............................................................................................. 14

vi

15 U.S.C. § 2057 ..................................................................................... 14

15 U.S.C. § 2064 ..................................................................................... 14

15 U.S.C. § 2076 ..................................................................................... 14

15 U.S.C. § 2069 ..................................................................................... 14

15 U.S.C. § 2071 ..................................................................................... 14

29 U.S.C. § 151 .................................................................................... 1, 29

29 U.S.C. § 153 ........................................................................ 2, 12, 14, 16

29 U.S.C. § 154 ......................................................................................... 2

29 U.S.C. § 156 ......................................................................................... 2

29 U.S.C. § 157 ......................................................................................... 1

29 U.S.C. §159 ..................................................................................... 2, 14

29 U.S.C. §160 ....................................................................... 1, 2, 3, 14, 15

Consumer Product Safety Act, Pub. L. 92-573, § 4, 86 Stat. 1207 (1972)........................ 15

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................. 9

**Regulations**

29 C.F.R. § 102.46(a) ............................................................................. 2

29 C.F.R. § 102.54–102.59 ................................................................... 28

**Other Authorities**

2 The Developing Labor Law: The Board, the Courts, and the National Labor
    Relations Act ch. 31.I.B (John E. Higgins, Jr., et al., eds., 7th ed. 2017)....................... 2

Jane Manners & Lev Menand, *The Three Permissions: Presidential Removal and the
    Statutory Limits of Agency Independence*,
    121 Colum. L. Rev. 1 (2021) .......................................................... 17

*Modifying Interpretation of Section 102.117(b)(1)*, General Counsel Memo 15-07 .......... 5

Plaintiff Energy Transfer, LP and its subsidiary and employing entity La Grange Acquisition, L.P. (collectively, "La Grange") is not entitled to an extraordinary preliminary injunction halting the congressionally mandated procedure for resolving labor disputes. First, La Grange has not demonstrated a likelihood of success on the merits of any of its four claims. Second, even if La Grange could demonstrate likelihood of success, it has not demonstrated that irreparable harm will result from any of the claims it raises. Finally, the balance of hardships and the public interest favor denying injunctive relief. For these reasons, La Grange's motion for a preliminary injunction should be denied.

## BACKGROUND

### I. Statutory and regulatory background

The National Labor Relations Board ("NLRB") is the principal federal agency protecting the rights of employees under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, *et seq.*, to form and join unions and engage in concerted activity for mutual aid and protection, or to refrain from such activities. 29 U.S.C. § 157. One of the key functions of the Agency—and the function directly at issue in this case—is its role in adjudicating allegations that an employer or union has committed an "unfair labor practice" ("ULP"). *Id.* § 160. Such allegations arise out of charges filed by members of the public, and formal proceedings do not commence unless and until the NLRB's General Counsel, or her delegate, finds merit to the charge and issues a complaint. *Id.* § 160(b). In most cases where a complaint is issued, it will be issued concurrently with a notice of hearing before an administrative law judge (ALJ).

1

The NLRB's ALJs are appointed in accordance with the Civil Service Reform Act (5 U.S.C. § 3105) and the NLRA (29 U.S.C. § 154(a)). *See WestRock Servs., Inc.* 366 NLRB No. 157, slip op. at 2–3 (2018). Once an ALJ issues a recommended decision, parties may file "exceptions" on any contested issue, asking the Board[1] itself to rule upon the matter. 29 C.F.R. § 102.46(a). In doing so, the Board is not bound to accept either the ALJ's findings of fact or conclusions of law. 29 U.S.C. § 160(c). Indeed, the Board has explicit statutory authorization to take additional evidence upon notice to the parties. *Id.*

The Board is comprised of five members who are appointed by the President with the advice and consent of the Senate. 29 U.S.C. § 153(a). Board members serve five-year, staggered terms, and may only be removed "for neglect of duty or malfeasance in office."[2] *Id.* The Board issues final decisions in ULP cases under Section 10(c) of the NLRA (29 U.S.C. § 160(c)), conducts and certifies the outcome of representation elections under Section 9 of the NLRA (*id.* § 159), and promulgates rules and regulations implementing the NLRA under Section 6 (*id.* § 156).

Under Section 10(c) of the NLRA, the Board is given "broad discretionary" authority to remedy unfair labor practices by ordering "such affirmative action . . . as will effectuate the policies of this Act." *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S.

---

[1] Where this brief refers to "the NLRB," it means the Agency as a whole. Where it refers to "the Board," it means the five-member adjudicative body established by Congress to decide cases under the NLRA.

[2] Traditionally, the five seats on the Board are split between three members from the President's party and two from the opposition party. 2 THE DEVELOPING LABOR LAW: THE BOARD, THE COURTS, AND THE NATIONAL LABOR RELATIONS ACT ch. 31.I.B (John E. Higgins, Jr., et al., eds., 7th ed. 2017).

203, 215–16 (1964) (citing 29 U.S.C. § 160(c)). The Board has traditionally sought to "restor[e] the situation, as nearly as possible, to that which would have obtained but for the [unfair labor practice.]" *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941). And consistent with these principles, the Board has often—with court approval—required parties who commit unfair labor practices to not only pay back wages, but also to compensate employees for other foreseeable pecuniary losses that are attributable to the party's unlawful conduct. *Thryv, Inc.*, 372 NLRB No. 22 (2022), slip op. at *11–13 (collecting cases), *enf. denied on other grounds*, 102 F.4th 727 (5th Cir. 2024).

Orders of the Board, however, are not self-enforcing. Section 10(e) of the NLRA provides that the Board must seek enforcement of its orders from an appropriate court of appeals for such orders to become enforceable as judicial injunctions. *Id.* § 160(e). Conversely, any "aggrieved person" may seek to set aside a final Board order in a court of appeals under Section 10(f) of the NLRA. *Id.* § 160(f). Only upon enforcement by a court of appeals does a Board order becomes fully effective against a respondent. *Dish Network Corp. v. NLRB*, 953 F.3d 370, 375 n.2 (5th Cir. 2020) ("The Board is given no power of enforcement. Compliance is not obligatory until the court, on petition of the Board or any party aggrieved, shall have entered a decree enforcing the order as made, or as modified by the court.") (cleaned up).

ALJ removal proceedings are defined by statute. With a handful of listed exceptions, "[a]n action may be taken against an [ALJ] . . . by the agency in which the [ALJ] is employed only for good cause established and determined by the [MSPB] on the record after opportunity for hearing before the [MSPB]." 5 U.S.C. § 7521(a).

Accordingly, removal of an NLRB ALJ is a two-step process: (1) the Board must bring an action to remove an ALJ; and (2) the MSPB must determine that good cause for removal has been established. The MSPB has applied "good cause" to remove or suspend ALJs for a variety of reasons. *See, e.g., HHS v. Jarboe*, 2023 MSPB 22, ¶ 3 (Aug. 2, 2023) ("failure to follow instructions"); *In re Chocallo*, 1 MSPR 605, 609–10 (1980) ("disobedience," "lack of judicial temperament," "bias," and "incompetence"). MSPB members also can only be removed for cause. 5 U.S.C. § 1202(d) ("Any member of the Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause."). Thus, ALJs, Board members, and MSPB members receive for-cause removal protection.

## II. Procedural history

A La Grange employee ("Charging Party") filed a ULP charge, Case No. 16-CA-306440, with the Agency's Region 16 office in Fort Worth, Texas alleging that La Grange had unlawfully transferred his position within the company in retaliation for the Charging Party's complaints about radioactive material and hazardous dust in work areas. Thereafter, La Grange terminated the Charging Party, who then filed a series of amended charges. The amended charges included allegations that La Grange had terminated the Charging Party for raising health and safety concerns and in retaliation for filing the initial ULP charge.

The Regional Director of Region 16 found merit and issued an administrative complaint, alleging that La Grange had transferred and later terminated the Charging Party in retaliation for his protected activity under the Act and his filing of ULP charges.

(attached as Exhibit A).[3] Consistent with the Board's goal of restoring the status quo for individuals affected by unfair labor practices, the Regional Director included in the complaint a request to "make the Charging Party whole for any other direct or foreseeable pecuniary harms and all reasonable consequential damages incurred as a result of [La Grange's] unlawful conduct."[4] An administrative law judge is scheduled to begin hearing this matter on July 30, 2024. To date, the five-member Board has taken no action regarding the administrative case.

On June 27, 2024, La Grange filed the instant Complaint in this Court against Defendants, alleging that the NLRB's: 1) five Board members are unconstitutionally insulated from removal; 2) administrative law judges are also unconstitutionally protected from removal; 3) the NLRB's adjudicative process violates the Seventh Amendment; and 4) the Board's purported combination of functions violates separation of powers and the due process clause. As a remedy, La Grange seeks a declaration that the removal protections for Board members and ALJs are unconstitutional and that La Grange has been deprived of its Seventh Amendment jury-trial right. It further seeks an order preliminarily enjoining the NLRB from proceeding on its administrative complaint and

---

[3] Consistent with the NLRB's normal practice prior to the start of ULP hearings, the administrative complaint has been redacted to protect the privacy of the parties. *Modifying Interpretation of Section 102.117(b)(1)*, General Counsel Memo 15-07, available at https://apps.nlrb.gov/link/document.aspx/09031d4581d69633.

[4] The Region has indicated that it plans to issue an amendment to the complaint removing the reference to consequential damages and will only seek to make the Charging Party whole for any direct or foreseeable pecuniary harms, consistent with *Thryv, Inc.,* 372 NLRB No. 22, slip op. at *13.

permanently enjoining the NLRB from implementing the statutory removal protections for Board members and administrative law judges. On July 3, 2024, La Grange moved for a preliminary injunction, and a hearing is scheduled on this motion for July 16, 2024.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy" that should "never [be] awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008) (citation omitted). The "decision to grant a preliminary injunction is to be treated as the exception rather than the rule." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363–64 (5th Cir. 2003). A plaintiff must make "a clear showing" that it is "entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To make that showing, a plaintiff must establish "(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 551 (2024). And a plaintiff must satisfy all four requirements to obtain a preliminary injunction. *See Wilson v. Off. of Violent Sex Offender Mgmt.*, 584 F. App'x 210, 212 (5th Cir. 2014) (mem.). Irreparable harm, the second factor, must "without question . . . be satisfied by independent proof, or no injunction may issue." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). The Supreme Court clarified in *Winter v. Natural Resources Defense Council, Inc.* that harm to the movant must be "likely" and not a mere possibility. 555

6

U.S. at 20. And the third and fourth factors of the preliminary injunction analysis—harm to others and the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Benisek v. Lamone*, 585 U.S. 155, 158–59 (2018) (per curiam) (explaining that balance of equities and public interest factors may overcome other two factors even in cases involving constitutional claims).

## ARGUMENT

### I. La Grange is not likely to succeed on any of its claims.

> *A. La Grange cannot succeed on either of its removal-based constitutional claims because it fails to allege prejudicial harm and, in any event, removal protections for those officials are constitutional.*

La Grange claims that removal protections for both the NLRB's Board members and its ALJs are unconstitutional. *See* Mot. 6–10. However, to succeed on either of those claims, La Grange must show that but for the removal protections, the President would have tried to remove those officials and that such removal would have some nexus to the offending agency action. La Grange has made no effort to clear this high bar for relief. Additionally, even if La Grange could show causal harm, its argument concerning removal protections for Board members is foreclosed by longstanding Supreme Court and recent Fifth Circuit precedent. Finally, despite the Fifth Circuit's holding in *Jarkesy*, removal protections for NLRB ALJs are also constitutional. As such, La Grange is not likely to succeed on either of its removal-based claims.

1. La Grange's failure to allege causal harm from either Board members' or NLRB ALJs' removal protections is fatal to its removal claims.

La Grange has not alleged any of the facts necessary to establish a right to relief on either of its removal claims because La Grange must show that the removal restrictions in question actually "cause[d] harm" to it. *Collins v. Yellen*, 594 U.S. 220, 260 (2021). In *Collins v. Yellen*, the Supreme Court refused to void actions taken by the Federal Housing Finance Agency based on unconstitutional removal protections for the agency's Director. *Id.* at 257–58. The Court explained that litigants needed to show causal harm (sometimes referred to as "compensable harm"), *e.g.*, if "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 259–60. Subsequently, the Fifth Circuit elaborated that there are "three requisites for proving harm" for removal claims: "(1) a substantiated desire by the President to remove the unconstitutionally insulated actor; (2) a perceived inability to remove the actor due to the infirm provision; and (3) a nexus between the desire to remove and the challenged actions taken by the insulated actor." *Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*, 51 F.4th 616, 632 (5th Cir. 2022) ("*CFSA*"), *reversed and remanded on other grounds*, 601 U.S. 416 (2024); *see also Collins v. Dep't of the Treasury*, 83 F.4th 970, 982–84 (5th Cir. 2023)

(holding that failure to allege causal harm is a defect requiring dismissal under Federal Rule of Civil Procedure 12(b)(6)).

Here, La Grange has not established that the President has sought to remove the now-assigned ALJ[5] or the yet-to-act Board members, or that, but for the removal restrictions, "the challenged actions taken by" these officials would not have occurred. *CFSA*, 51 F.4th at 632; *see Collins v. Yellen*, 594 U.S. at 259–60. And La Grange has failed to state which actions by the ALJ or Board members it is challenging.

Unlike challenges to an improper appointment, abstract removability challenges affect "the conditions under which those officers might someday be removed [rather than] the validity of any officer's continuance in office." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 508 (2010). Every reported case on this issue requires a challenger to specifically show that a removal protection actually harmed that very challenger. *See Collins*, 83 F.4th at 982–84; *CFSA*, 51 F.4th at 632–33; *see also K & R Contractors, LLC v. Keene*, 86 F.4th 135, 149 (4th Cir. 2023); *CFPB v. L. Offs. of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023), *cert. denied,* 2024 WL 2709347 (May 28, 2024); *Integrity Advance, LLC v. CFPB*, 48 F.4th 1161, 1170 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 2610 (2023); *CFPB v. CashCall, Inc.*, 35 F.4th 734, 742–43 (9th Cir. 2022); *Calcutt v. FDIC*, 37 F.4th 293, 318–20 (6th Cir. 2022), *rev'd per curiam on other grounds*, 598 U.S. 623 (2023). It is thus unsurprising that courts faced with the question—including another judge of this Court—have repeatedly denied preliminary

---

[5] When La Grange filed its motion for a preliminary injunction, no ALJ had yet been assigned to the underlying ULP proceeding.

injunctions sought on ALJ removability grounds. *See Space Expl. Techn. Corp. v. Bell*, ---

F. Supp. 3d ---, No. 1:23-cv-00137, 2023 WL 8885128, at *4–5 (S.D. Tex. Nov. 8, 2023);

*Care One, LLC v. NLRB*, No. 3:23-cv-00831 (RNC), 2023 WL 6457641, at *3–4 (D.

Conn. Oct. 4, 2023), *appeal docketed*, No. 23-7475 (2d Cir. Oct. 20, 2023); *Leachco, Inc.

v. Consumer Prod. Safety Comm'n*, No. CIV-22-232-RAW, 2023 WL 4934989, at *2

(E.D. Okla. Aug. 2, 2023), *affirmed* 103 F.4th 748 (10th Cir. 2024); *Burgess v. FDIC*, 639

F. Supp. 3d 732, 747 (N.D. Tex. 2022), *appeal docketed sub nom. Burgess v. Whang*, No.

22-11172 (5th Cir. Dec. 5, 2022) (stay issued on July 17, 2023).[6]

The Fifth Circuit has also rejected the argument that *Collins*'s causal-harm rule

should be limited to requests for retrospective relief, rather than prospective relief,

explaining that *Collins*'s "remedial inquiry focused on whether a harm occurred that

would create an entitlement to a remedy, rather than the nature of the remedy." *CFSA*, 51

F.4th at 631 (cleaned up); *accord Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103

F.4th 748, 757 (10th Cir. 2024); *Crystal Moroney*, 63 F.4th at 180–81; *Calcutt*, 37 F.4th

at 316. La Grange would thus not be able to evade *Collins*'s clear holding by

distinguishing ongoing and past administrative proceedings. Rather, La Grange must

demonstrate actual prejudice from removal restrictions, but has made no effort to do so.

---

[6] On July 10, 2024, a minute entry docketed by the United States District Court for the
Western District of Texas granted a preliminary injunction in a case involving a challenge
to the removal protections for NLRB ALJs and Board members. *See Space Exploration
Techs. Corp. v. NLRB*, No. 6:24-CV-00203 (W.D. Tex. July 10, 2024), ECF No. 41.
However, a written order has not yet issued. Similarly, the Fifth Circuit has granted an
injunction pending appeal in another case, *Space Exploration Techs. Corp. v. NLRB*, No.
24-40315, (5th Cir. May 2, 2024), Doc. No. 40-2, with no reasoning provided. Neither
disposition is binding precedent that controls the outcome of La Grange's motion.

Because of this, La Grange has failed to state a claim, *Collins*, 83 F.4th 970, 982–84, so it cannot be likely to succeed on its removal counts.

2. Preliminary injunctive relief is unavailable where severance can resolve the threat of appearing before an unconstitutionally insulated adjudicator.

Beyond La Grange's failure to allege causal harm, its removal claims also fail due to applicable remedial principles. This is because severing statutory removal restrictions found unconstitutional would remedy the alleged violations. There is "a strong presumption of severability," under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 625, 627 (2020); *see also Free Enter. Fund*, 561 U.S. at 508; *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197, 234 (2020). Generally, statutes are severable if "the remainder of the law is capable of functioning independently and thus would be fully operative as a law." *Barr*, 591 U.S. at 630. And "it is fairly unusual for the remainder of a law not to be operative." *Id.* at 628.

The procedure for removing ALJs, which La Grange challenges, specifies that ALJs are removable "by the agency in which the [ALJ] is employed only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). Should this Court find ALJs' removal protections to be unconstitutional, at final judgment, it could sever the second half of the sentence in § 7521(a) after "good cause," as to the ALJ presiding over La Grange's case. The same principle applies as to Board member removability. If this

Court finds their removal protections unconstitutional, rather than render the NLRA inoperable, it could sever the "for cause" provision in 29 U.S.C. § 153(a).[7] *See* 29 U.S.C. § 153(a) ("Any member of the Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause."). The administrative proceedings could thus proceed without the alleged constitutional defects.

Severance would be consistent with how the Supreme Court has dealt with unlawful removal protections. In *Free Enterprise Fund*, the plaintiffs sued to stop an ongoing investigation by the Public Company Accounting Oversight Board (PCAOB). The Court found the PCAOB's removal protections unconstitutional, but it rejected plaintiffs' attempt to enjoin the PCAOB's operations and granted declaratory relief only, severing the offending statutory provisions, and leaving the members of the PCAOB freely subject to removal by the Securities and Exchange Commission. 561 U.S. at 508, 513. Likewise, in *Seila Law LLC v. Consumer Finance Protection Bureau*, the Court found the removal protections for the Director of the Consumer Financial Protection Bureau (CFPB) unconstitutional. 591 U.S. at 232. But it did not limit any of the CFPB's operations. Instead, it severed the Director's removal protection, noting that "[t]he provisions of the [statute] bearing on the CFPB's structure and duties remain fully

---

[7] Regardless, no change to the NLRA is needed because Board members are constitutionally insulated from removal under *Humphrey's Executor v. United States*, 295 U.S. 602 (1935) and recent Fifth Circuit decisions, as demonstrated below at 13–17. *See, e.g.*, *Consumers' Rsch. v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 351–52 (5th Cir. 2024), *petition for cert. filed*, No. 23-1323, 2024 WL 3070026 (U.S. June 14, 2024).

operative without the offending tenure restriction" and that "[t]hose provisions are capable of functioning independently." *Id.* at 235.

Accordingly, even if the Court were to find the ALJs' or Board members' removal protections unconstitutional, La Grange would not be entitled to an injunction (preliminary or otherwise) of the administrative proceedings. *See Space Expl. Techs. Corp. v. Bell*, 2023 WL 8885128, at *5 (holding that the plaintiff "ha[d] not shown it is entitled to an injunction instead of severance on its removal claim"). Rather, the most La Grange could potentially obtain, at the end of the instant case, would be a declaratory judgment invalidating the offending removal provisions, with any "invalidation" being no broader than necessary to remedy La Grange's alleged injuries. *See*, *e.g.*, *Lewis v. Casey*, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established."); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 222 (1974) (when "the relief sought produces a confrontation with one of the coordinate branches of the Government," the "framing of relief" may be "no broader than required" to address any "concrete injury"). But this Court need not decide now precisely how it would sever the statute or how broad a declaratory judgment would be, in order to find that La Grange is not entitled to its requested injunction.

   3. Removal protections for NLRB Board members are constitutional under *Humphrey's Executor* and Fifth Circuit law.

Even if La Grange could meet the high bar for alleging causal harm or show that severance is an inappropriate remedy, it stills fails to show a likelihood of success on its

removal claims. La Grange contends that because Board members "wield substantial executive power," they do not fall into the category of permissible removal protections for principal officers recognized in *Humphrey's Executor v. United States*, 295 U.S. 602 (1935). *See* Mot. 7 (quoting *Seila Law*, 591 U.S. at 218).

This very argument was recently rejected by the Fifth Circuit in *Consumers' Research v. Consumer Product Safety Commission*, 91 F.4th 342 (5th Cir. 2024). In *Consumers' Research*, the Court of Appeals addressed a challenge to removal protections identical to those of Board members but applicable to commissioners serving on the Consumer Product Safety Commission (CPSC). *Id.* at 346–47; *compare* 15 U.S.C. § 2053(a) *with* 29 U.S.C. § 153(a). The Court of Appeals held that *Humphrey's Executor* rationale broadly "protects *any* 'traditional independent agency headed by a multimember board.'" *Id.* at 352 (quoting *Seila Law*, 591 U.S. at 207) (emphasis added); *see also Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023). The court reasoned that even though the CPSC "exercises substantial executive power (in the modern sense)," its structure and the commissioners' statutory removal protections did not violate separation-of-powers principles. *Consumers' Rsch.*, 91 F.4th at 353–54. In reaching this conclusion, the court considered that the CPSC possesses the power "to promulgate safety standards and ban hazardous products[,] . . . . launch administrative proceedings, issue legal and equitable relief, and commence civil actions in federal courts," including actions seeking injunctive relief and even those seeking civil monetary penalties. *Id.* at 346 (citing 15 U.S.C. §§ 2056(a), 2057, 2064, 2076, 2069(a)–(b), 2071(a)); *see also id.* at 357 (Jones, J.,

14

concurring in part and dissenting in part) (noting that the CPSC "imposes heavy penalties for violations of its charging statutes").

Such powers are no less than those La Grange alleges here to be so substantial as to exceed the scope of *Humphrey's Executor*. *See* Mot. 7 (referencing various powers Board members possess like the power to appoint various Agency personnel, issue subpoenas, engage in rulemaking, conduct union representation elections, and adjudicate representation election disputes, among others). Indeed, beyond the Board's power to promulgate rules, the Board cannot initiate its administrative proceedings,[8] seek civil monetary penalties, *see Republic Steel Corp. v. NLRB*, 311 U.S. 7, 10 (1940), or provide nonremedial relief, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937); *Agwilines, Inc. v. NLRB*, 87 F.2d 146, 150–51 (5th Cir. 1936). Nor are its orders self-enforcing. 29 U.S.C. § 160(e), (f).

Additionally, the Fifth Circuit in *Consumers' Research* identified three reasons that *Humphrey's Executor* shields the CPSC from constitutional infirmity. 91 F.4th at 353–54. All three reasons equally apply to the NLRB.

First, "[p]erhaps the most telling indication of a severe constitutional problem with an executive entity is a lack of historical precedent to support it." *Id*. at 354 (quoting *Seila Law*, 591 U.S. at 220) (cleaned up). "In other words, historical pedigree matters," and unlike the agencies in *Seila Law* and *Free Enterprise Fund*, the Fifth Circuit concluded

---

[8] Individuals may file ULP charges, but formal Board action depends on the General Counsel or her delegate first finding merit to a charge and issuing a complaint. 29 U.S.C. §160(b). Additionally, individuals must file an election petition to initiate the Board's representation election proceedings. 29 U.S.C. §159(c).

CPSC "has history on its side." *Id*. If that is true of an agency founded in 1972, *see Consumer Product Safety Act*, Pub. L. 92-573, § 4, 86 Stat. 1207 (1972), it is certainly true of the NLRB, which was created in 1935—based on the FTC's design—and then survived an immediate constitutional challenge. *Jones & Laughlin Steel*, 301 U.S. at 49; *see Dish Network*, 953 F.3d at 375 n.2.

Second, the Fifth Circuit noted that "the [CPSC] does not share the defining feature that the Supreme Court in *Seila Law* relied on to hold the CFPB unconstitutional." *Consumers' Rsch*, 91 F.4th at 354. Just like the CPSC, the NLRB is not a *single-Director* agency with significant power vested in a *single individual*, accountable to no one.[9] *Id*.

Third, the Fifth Circuit noted that "[CPSC] does not have any of the features that combined to make the CFPB's structure 'even more problematic' in *Seila Law*." *Id*. As with the CPSC, the NLRB's "staggered appointment schedule means that each President *does* have an[] opportunity to shape [its] leadership and thereby influence its activities." *Id*. (internal quotations omitted). Nor do the NLRB or CPSC "recei[ve] funds outside the appropriations process" such that the President would be denied influence over their activities "via the budgetary process." *Id*. at 357 (internal quotations omitted). Thus, the Board lacks any of the features that the Fifth Circuit deems potentially outside the scope of *Humphrey's Executor*.

---

[9] Moreover, the single officer with "final authority" over investigations and prosecutions at the NLRB, the General Counsel, is independent of the Board and removable by the President at will. *See* 29 U.S.C. § 153(d); *Exela Enter. Sols. v. NLRB*, 32 F.4th 436, 445 (5th Cir. 2022).

16

Finally, La Grange argues that because Board members are removable only "'for neglect of duty or malfeasance in office,' but not for other causes like inefficiency," the removal protections are unconstitutional. Mot. 6 (quoting 29 U.S.C. § 153(a)). It claims that *Collins v. Yellen* supports this contention. *Id.* (citing *Collins v. Yellen*, 594 U.S. at 256). This is wrong because the Supreme Court in *Collins* made crystal clear that its holding was based on the novel administrative structure at issue in that case: a removal-protected "head of an agency *with a single top officer*." *Collins*, 594 U.S. at 256 (emphasis added); *see also id.* at 250 (noting that *Seila Law* was "all but dispositive" of the question in *Collins*). And this argument ignores the fact that the CPSC commissioners at issue in *Consumers' Research*, as discussed above, have the same exact protections as Board members: *See* above at 14; *see also* Jane Manners & Lev Menand, *The Three Permissions: Presidential Removal and the Statutory Limits of Agency Independence*, 121 Colum. L. Rev. 1, 8, 69 (2021) (explaining that the absence of "inefficiency" as a ground for removal does not unconstitutionally interfere with the President's authority).

4.   Removal protections for NLRB ALJs are also constitutional.

In addition to the fact that La Grange has identified no causal harm or any reason why severance principles do not foreclose injunctive relief, La Grange's claim challenging ALJ removal protections is still not likely to succeed on the merits.

La Grange relies on *Jarkesy v. Securities and Exchange Commission*, in which a split Fifth Circuit panel found removal protections for SEC ALJs unconstitutional. 34 F.4th 446, 463 (2022), *aff'd on other grounds*, --- S. Ct. ---, 2024 WL 3187811 (June 27, 2024); *see also* 51 F.4th 644, 646–47 (5th Cir. 2022) (Haynes, J., dissenting from denial

of petition for rehearing *en banc*). The NLRB preserves, for merits briefing, its arguments that Board ALJs are unlike those addressed in *Jarkesy*. To the extent that this Court believes that *Jarkesy* applies here, the NLRB respectfully notes its disagreement with the Fifth Circuit's decision, and preserves this argument for future stages of this case.[10] And the NLRB reiterates that it is unnecessary for the Court to reach this issue, as severance and prejudicial-harm principles render this claim for injunctive relief unlikely to succeed.

B. *La Grange's Seventh Amendment claim is beyond this Court's subject-matter jurisdiction and contrary to controlling law.*

Initially, La Grange puts the cart before the horse by proceeding straight to the merits of its Seventh Amendment claim prior to establishing subject-matter jurisdiction. *See* Mot. at 10–13. That jurisdiction is lacking here, as this claim meets none of the three factors the Supreme Court considered in *Axon Enterprise Inc. v. FTC* for non-statutory

---

[10] "[T]he power of Congress to regulate removals" is "incidental to the exercise of its constitutional power to vest appointments." *Myers v. United States*, 272 U.S. 52, 161 (1926); *see United States v. Perkins*, 116 U.S. 483, 485 (1886). The key inquiry in removal cases is whether Congress "interfere[d] with the President's exercise of the 'executive power' and his . . . duty to 'take care that the laws be faithfully executed' under Article II." *Morrison v. Olson*, 487 U.S. 654, 658 (1988). Here, the scope of the President's constitutional powers are not infringed upon because ALJs exercise purely *adjudicative* authority. *See Morrison*, 487 U.S. at 691 n.30; *Wiener v. United States*, 357 U.S. 349, 355–56 (1958); *Humphrey's Ex'r*, 295 U.S. at 629. The Supreme Court's decision in *Free Enterprise Fund* is inapplicable to NLRB ALJs because of this purely adjudicative function, *see Leachco*, 103 F.4th at 763–65, and also because the removal restrictions at issue in *Free Enterprise Fund* were "highly unusual," "novel," and "rigorous." 561 U.S. 477, 496, 505 (2010); *see also Decker Coal v. Pehringer*, 8 F.4th 1123, 1132–36 (9th Cir. 2021); *Calcutt*, 37 F.4th at 319–20. Nor do removal protections afforded to MSPB and NLRB members change the analysis, as the Supreme Court has repeatedly upheld statutory removal restrictions that provide for review by the federal courts, whose judges are not removable by the President *at all*. *See Morrison*, 487 U.S. at 663–64; *Perkins*, 116 U.S. at 484–85.

review. 598 U.S. 175 (2023). Specifically, *Axon* asks: 1) does "precluding district court jurisdiction . . . foreclose all meaningful judicial review"; 2) is the challenge "wholly collateral" to the agency's normal proceedings; and 3) does the claim fall within the "agency's expertise"? *Id.* at 186 (cleaned up).

La Grange's Seventh Amendment claim rests on the potential that a future Board order may require it to reimburse the Charging Party for losses, such as the alleged loss of the Charging Party's house, as part of a make-whole remedy under the principles set forth in *Thryv, Inc.,* 372 NLRB No. 22 (2022). This claim fails all three of the *Axon* factors. First, contesting a particular subset of remedies that *may* result at the end of a specific administrative proceeding is not a "structural" challenge attacking the very nature of the agency, as in *Axon*. Second, determining what remedy should flow from violations of the NLRA is what the NLRB does on a day-to-day basis; it presents a question of "how [the NLRB's] power [is] wielded," not the "power generally" of the agency. *Axon*, 598 U.S. at 193. Finally, the Board's power to fashion remedies under Section 10(c) has long been recognized by the Supreme Court as a core area of Board expertise. *E.g., Phelps Dodge Corp.*, 313 U.S. at 194.

Allowing this remedial issue to percolate through the administrative process is particularly appropriate where, as here, the ALJ hearing the case, or the Board on review, might determine the Charging Party's claims have no merit, or that the requested remedies aren't warranted—thereby obviating *any* need to address the constitutional issue. *See Elgin v. Dep't of Treasury*, 567 U.S. 1, 22–23 (2012) (finding lack of subject matter jurisdiction where "preliminary questions unique to the employment context may

19

obviate the need to address the constitutional challenge."). Indeed, it was in this

posture—i.e., on review of final agency action—that the Seventh Amendment challenge

arose in the Supreme Court's recent decision in *SEC v. Jarkesy*. --- U.S. ----, 2024 WL

3187811, at *6 (June 27, 2024). Accordingly, La Grange's Seventh Amendment claim

should be dismissed for lack of jurisdiction; if necessary, a court of appeals can review

this claim on the merits and provide a remedy after a final Board order. *See Bokat v.*

*Tidewater Equip. Co.*, 363 F.2d 667, 673 (5th Cir. 1966) ("District Courts . . . have a very,

very minor role to play in this statutory structure" under the NLRA.).

And even if subject-matter jurisdiction could be established, La Grange's claims

fail on their merits. As established by the Fifth Circuit in *Jarkesy v. SEC*, the Seventh

Amendment "analysis [] moves in two stages." 34 F. 4th at 454. First, a court must

determine whether an action's claims arise at common law under the Seventh

Amendment. Second, *if the action involves common law claims*, a court must determine

whether the Supreme Court's public-rights cases nonetheless permit Congress to assign it

to agency adjudication without a jury trial." 34 F.4th at 453 (emphasis added), *affirmed in*

*rel. part*, --- U.S. ---, 2024 WL 3187811 at *7.

The public rights exception, standing alone, is sufficient to defeat La Grange's

Seventh Amendment claim. In *SEC v. Jarkesy*, the Supreme Court recognized the

continued vitality of this doctrine, and specifically held that Congress could properly

insulate even legal remedies from the Seventh Amendment right to a jury trial where the

underlying proceeding involves "public rights." 2024 WL 3187811, at *10. To determine

20

whether a claim properly falls within this exception, the Court looks at whether a statutory claim "borrow[s] its cause of action from the common law." *Id.* at *15.

In *Jarkesy,* this exception was held inapplicable because the "fraudulent conduct" statutory provisions being enforced "derive[d] from, and are interpreted in light of, their common law counterparts." *Id.* at *16. In so holding, however, the Court distinguished and endorsed the application of the exception in its prior decision in *NLRB v. Jones & Laughlin Steel Corp.* because NLRA claims are "unknown to the common law." *Id.* at *16 (citation omitted). And, contrary to La Grange's suggestions (Mot. 12), it is beyond dispute that the rights protected under the NLRA are public, not private, rights. *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 362 (1940) ("The proceeding authorized to be taken by the Board under the National Labor Relations Act is not for the adjudication of private rights . . . . The Board acts in a public capacity to give effect to the declared public policy of the Act[.]"); *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 543 (1943) (claims arising under the NLRA "vindicate public, not private rights"). Accordingly, the public rights exception applies here, and provides a sufficient basis for denying La Grange's Seventh Amendment claim without further analysis.

But even assuming the public rights exception does not apply, La Grange still cannot establish a valid Seventh Amendment claim. Such a claim has merit only if "a suit is legal in nature." *Jarkesy*, 2024 WL 3187811, at *8. And that inquiry requires an examination of both "the cause of action and the remedy it provides." *Id.*

A cause of action can be legal in nature if there is a "close relationship" between a statutory claim and a "common law 'ancestor.'" *Id.* at *9 (quoting *Foster v. Wilson*, 504

F.3d 1046, 1050 (9th Cir. 2007)). But, as addressed above, La Grange's challenge wholly ignores that the NLRA claims at issue do not "arise" under the common law. Over eighty years ago, the Supreme Court held that a proceeding to enforce the substantive rights created by the NLRA "is one unknown to the common law" and therefore outside the purview of the Seventh Amendment. *Jones & Laughlin*, 301 U.S. at 48. Indeed, the Fifth Circuit reached this same conclusion one year earlier, holding in *Agwilines, Inc. v. NLRB* that the NLRA's substantive rights "were not only unknown, they were *obnoxious* to the common law." 87 F.2d 146, 150. La Grange simply ignores that the NLRA creates novel public claims, completely divorced from any common-law equivalent; its failure to address this deficiency is fatal.

The inapplicability of the Seventh Amendment is confirmed by examining the remedy that is the sole focus of La Grange's briefing—that is, the make-whole relief authorized by the Board under *Thryv* for "direct or foreseeable pecuniary harm" arising from an unfair labor practice. 372 NLRB No. 22, slip op. at 1.[11] "What determines whether a monetary remedy is legal is if it designed to punish or deter the wrongdoer, or, on the other hand, solely 'to restore the status quo.'" *Id.* at *8 (cleaned up). In *Jarkesy*, the Court determined that the SEC's civil monetary penalties, which had the potential to

---

[11] Although La Grange notes that the ULP complaint currently includes a request for "consequential damages" resulting from La Grange's alleged unlawful conduct, Mot. 5, as indicated above, Region 16 will be issuing an amendment to the administrative complaint to remove that reference. As the Board made clear in *Thryv* (indeed, in a section quoted by La Grange), it will not order parties to pay consequential damages, only "direct or foreseeable pecuniary harms." 372 NLRB No. 22, slip op. at *13.

far exceed any loss to victims and could have been pocketed directly by the agency (as opposed to being returned to victims), clearly were designed to deter conduct, not to make individuals whole. *Id.* at \*8–9. Therefore, the Court concluded that "[s]uch a penalty by definition does not 'restore the status quo' and can make no pretense of being equitable." *Id.* at \*9 (quoting *Tull v. U.S.,* 481 U.S. 412, 422 (1987)).

The remedy recognized by the Board in *Thryv* is wholly distinct from the monetary penalties at issue in *Jarkesy*. As the Board explained, *Thryv* sought to "standardiz[e] our make-whole relief to expressly include the direct or foreseeable pecuniary harms suffered by affected employees . . . to more fully effectuate the make-whole purposes of the Act." 372 NLRB No. 22, slip op. at \*10. This desire to standardize remedies rested on the fact that "[w]e cannot fairly say that *employees* have been *made whole* until they are fully compensated for these kinds of pecuniary harms[.]"[12] *Id.* at \*15 (emphasis added). In other words, the *Thryv* remedies are focused entirely on equitable considerations of ensuring that the *victims* of unfair labor practices are made *whole*.[13]

---

[12] La Grange entirely misquotes the Board's decision in *Thryv*, 372 NLRB No. 22, at \*13-14, when it claims that the Board authorized "private relief." Mot. 10. That term appears nowhere in the Board's decision, and in fact, the cited discussion explains how the Board's remedial authority under Section 10(c) is based on the protection of public rights—specifically, the right of to self-organize—not the vindication of private interests. *Id.* at \*13 ("Instead, the Board's remedial authority is rooted in its Section 10(c) mandate to 'translat[e] into concreteness the purpose of safeguarding and encouraging the right of self-organization,' rather than the correction of private injuries.'" (quoting *Phelps Dodge Corp.*, 313 U.S. at 192–93)).

[13] La Grange suggests that the remedies ordered in *Thryv* go beyond the Board's statutory authority. Mot. 14–15. This is irrelevant to La Grange's Seventh Amendment claims, and in any event is rebutted by decades of historical practice. *See Thryv, Inc.,* 372 NLRB No. 22, slip op. at \*11–13 (collecting cases).

This is the opposite of the monetary penalties in *Jarkesy*, which are directed at the *company*, as a wrongdoer, and are designed to *punish* and *deter*—remedies that, the Court explained, are available only at law. While "the remedy [was] all but dispositive" in favor of the challenger in *Jarkesy* (2024 WL 3187811, at \*8), it is anything but dispositive in favor of La Grange here, particularly when the NLRA claims at issue are "unknown to the common law." *Jones & Laughlin*, 301 U.S. at 48–49.[14]

> *C. La Grange is not likely to establish district court jurisdiction over nor prevail on its combined-functions claim.*

To the extent La Grange's combination of functions argument largely rehashes the Seventh Amendment concerns addressed above, it runs into the same failure to clear *Axon*'s jurisdictional hurdles described above.[15]

---

[14] La Grange overreads *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993), to imply that make-whole relief was unavailable in courts of equity. Mot. 10. To the contrary, the Court recognized that "[a]t common law, however, there were many situations—not limited to those involving enforcement of a trust—in which an equity court could establish purely legal rights and grant legal remedies which would otherwise be beyond its authority." *Id.* at 256 (cleaned up). Thus, the Court's holding there did not rest upon any notion that make-whole relief was unavailable in equity; instead, the Court found that expanding ERISA's statutory text of "equitable relief" to include all relief available at equity would render certain statutory language "superfluous," contrary to congressional intent. *Id.* at 258; *see SEC v. Jarkesy*, 2024 WL 3197811, at \*8 (monetary remedies can be equitable if designed "solely to 'restore the status quo.'").

[15] La Grange's claim regarding an unlawful combination of functions within the NLRB is ultimately unclear. The NLRB recognizes, however, that *Axon* permitted a district court to exercise jurisdiction over the claim that the FTC's "combination of prosecutorial and adjudicative functions . . . renders *all* of its enforcement actions unconstitutional." 598 U.S. at 183 (emphasis added). Such a "fundamental, even existential" challenge, *id.* at 180, bears little resemblance to La Grange's here. *See* Mot. 13–15.

Setting that concern aside, La Grange appears to fault the Board for choosing to engage in policymaking through adjudication, as opposed to rulemaking. Mot. at 13–14. But La Grange fails to explain how this choice creates any combination-of-powers concern, and what's more, is contrary to Supreme Court precedent. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) ("[T]he Board is not precluded from announcing new principles in an adjudicative proceeding and . . . the choice between rulemaking and adjudication lies in the first instance within the Board's discretion.").

Next, La Grange appears to claim that awarding make-whole relief beyond backpay and reinstatement exceeds the statutory authority of the Board and converts its public action into a private right. Mot. at 14–15. Again, it is unclear how these arguments invoke any combination-of-functions concerns. And they are clearly incorrect under binding precedent. *E.g.*, *Phelps Dodge Corp.* 313 U.S. at 188–89, 198 (Section 10(c)'s reference to "reinstatement of employees with or without backpay" merely serves as an "illustrative application" of the Board's "diverse" remedial authority); *Va. Elec. & Power Co.*, 319 U.S. at 543 (claims arising under the NLRA "vindicate public, not private rights").[16]

---

[16] Even if La Grange's arguments could somehow be understood to raise an issue regarding the purported combination of adjudicatory and prosecutorial functions within the NLRB, *see supra* note 15, such an argument would not only proceed from a mistaken premise—the General Counsel, who is independent of the Board, has final authority to prosecute NLRA violations, *see Exela*, 32 F.4th at 443–44—it would also be unavailing under Fifth Circuit precedent. *Illumina, Inc.,* 88 F.4th at 1047 ("[A]dministrative agencies can, and often do, investigate, prosecute, and adjudicate rights without violating due process.").

**II. La Grange has not met its burden to show irreparable harm arising from the alleged constitutional infirmities it identifies.**

La Grange fails to offer "independent proof" of irreparable harm, let alone establish that such harm is likely to occur. *See White*, 862 F.2d at 1211. Not every constitutional injury warrants injunctive relief. *See Sheffield v. Bush*, 604 F.3d 586, 609 (S.D. Tex. 2022). *Contra* Mot. at 15–16. All La Grange's claims suffer from this fundamental defect.

La Grange primarily bases its claim of irreparable harm on the notion that *Axon* makes such proof unnecessary. Mot. 16. But *Axon* did not address injunctive relief and does not bear on the question of irreparable harm. Rather, the narrow question decided in *Axon* was whether a district court had jurisdiction to hear structural constitutional challenges to ongoing agency proceedings. *Leachco, Inc. v. CPSC*, 103 F.4th 748, 759 (10th Cir. 2024) ("We will follow the Supreme Court's words of caution when interpreting the same 'here-and-now injury' language from *Axon*—we will not misunderstand what was said about jurisdiction in *Axon* 'as a holding on a party's entitlement to relief based on an unconstitutional removal provision.'") (quoting *Collins*, 594 U.S. at 258 n.24); *accord Kim v. FINRA*, --- F. Supp. 3d ---, No. 1:23-CV-02420 (ACR), 2023 WL 6538544, at *13 & n.19 (D.D.C. Oct. 6, 2023). Reading *Axon* to require a preliminary injunction any time a party challenges administrative proceedings on constitutional grounds would disrupt law-enforcement efforts by federal agencies across the government and overwhelm the courts with preliminary-injunction requests amounting to a judicial preclearance process. *See Leachco*, 103 F.4th at 759; *Meta*

*Platforms, Inc. v. FTC*, --- F. Supp. 3d ---, No. 23-3562 (RDM), 2024 WL 1121424, at *9 (D.D.C. Mar. 15, 2024), *appeal docketed,* No. 24-5054 (D.C. Cir. Mar. 15, 2024). That would contravene the well-accepted principles that a "preliminary injunction is an extraordinary remedy" and "[t]he decision to grant [one] is be treated as the exception rather than the rule." *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

A bare citation to *Axon* coupled with constitutional challenges to agency proceedings is insufficient on its own to establish irreparable harm. Nor has La Grange proffered any evidence of harm from the alleged constitutional violations. Thus, La Grange's failure to show irreparable harm dooms its motion for preliminary relief.

A.  *La Grange has not shown any irreparable harm resulting from removal protections for NLRB ALJs or Board members.*

As discussed in depth above, *see* 8–11, La Grange has failed to allege any causal harm arising from the allegedly unconstitutional removal protections for Board members and ALJs. Because La Grange fails to show the required harm, its claim of irreparable harm arising from such removal protections falls flat. Put differently, La Grange cannot claim that harm arising from removal restrictions is irreparable if it does not warrant a remedy in the first place. Relatedly, since the only remedy La Grange could possibly receive on these claims is declaratory, *see* above at 12–13, there is no harm to La Grange in letting the instant litigation proceed to final judgment.

B.  *La Grange's Seventh Amendment and combination-of-functions claims are too speculative to be a basis for irreparable harm.*

27

La Grange provides no basis for finding that the NLRB potentially pursuing the make-whole remedies referenced in *Thryv* harms La Grange in any irreparable way. *See* Mot. 15–17. First, the potential injury La Grange alleges remains entirely speculative. No ALJ has recommended, nor has the Board ordered, any remedy, let alone the *Thryv*-type remedies on which La Grange bases its Seventh Amendment claim. Mot. 10–13; *see, e.g.*, *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) ("An injunction is appropriate only if the anticipated injury is imminent and irreparable.") (internal citations omitted).[17]

More importantly, even if this Court concludes that the Board lacks authority to order *Thryv*-type remedies, this purported defect would not taint the Agency's entire proceeding. Such a finding by this Court would not bear upon the Board's power to seek other statutory remedies such as backpay, long deemed outside the Seventh Amendment's reach. *Jones & Laughlin Steel Corp.*, 301 U.S. at 48; *Agwilines, Inc.,* 87 F.2d at 150–51. Instead, the appropriate relief would be *at most* to enjoin the NLRB from seeking those remedies in its administrative proceedings, not the "extraordinary remedy" of a preliminary injunction halting the entire administrative process. *Winter*, 555 U.S. at 24;

---

[17] Further, even a court-enforced Board order on liability containing a *Thryv* remedy does not fully answer the question of the appropriate remedy. For example, in this case, if La Grange were found liable for the alleged unfair labor practices, it would still retain the right to contest whether the Charging Party's loss on the sale of the Charging Party's house actually constituted "direct or foreseeable pecuniary relief" in a subsequent proceeding, called a compliance specification hearing, before an ALJ.  *See generally* 29 C.F.R. § 102.54–102.59 (discussing "compliance specification" procedures). The ALJ's compliance specification decision is subject to review by the Board, and if necessary, a circuit court of appeal on enforcement. *E.g., Lee Brass Co.,* 316 NLRB 1122, 1122 n.4, 1128–31 (1995), *enforced mem.*, 105 F.3d 671 (11th Cir. 1996). Put succinctly, La Grange does not face any imminent monetary liability.

*see M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 272 (5th Cir. 2018) ("[I]njunctions must be narrowly tailored to remedy the specific action which gives rise to the order.") (cleaned up).

The same holds true for La Grange's combination-of-functions claim; for the same reasons discussed in Section II.B., this claim is too dependent on the potential award of certain remedies in the ULP proceedings to be a legitimate basis for a claim of irreparable harm.

### C. *La Grange's alleged economic harm is insufficient to establish a right to preliminary injunctive relief.*

Finally, La Grange hazards a half-hearted argument regarding the "economic harm from the [allegedly] unconstitutional [ULP] proceedings." Mot. 16. La Grange opines it has "limited insight into its liability" and that the NLRB's calculation of its liability "will only continue to rise as La Grange moves towards the Hearing date." *Id.* at 17. But any monetary liability which a circuit court might eventually impose on La Grange is quintessentially reparable after-the-fact.

## III. The balance of the equities and the public interest factors counsel against granting a preliminary injunction.

As described above, La Grange has failed to meet its burden as to irreparable harm and likelihood of success on the merits. But even if La Grange had established those required elements, it cannot show that its alleged harm outweighs the harm an injunction would inflict on the public and those not before the Court. *See Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 457 (5th Cir. 2016).

It is axiomatic that "the public has a powerful interest in the enforcement of duly enacted laws." *League of United Latin Am. Citizens v. Abbott*, 601 F. Supp. 3d 147, 184 (W.D. Tex. 2022) (cleaned up). Interfering with the enforcement of "statutes enacted by representatives of [the] people" is a "form of irreparable injury" to the government. *Tex. Alliance for Ret. Ams. v. Hughs*, 976 F.3d 564, 569 (5th Cir. 2020) (cleaned up); *see also Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020). Through the NLRA, Congress empowered the NLRB to initially adjudicate and, where appropriate, remedy unlawful labor practices to "safeguard[] commerce from injury, 29 U.S.C. §§ 151, 160; *see U.A.W. Local 283 v. Scofield*, 382 U.S. 205, 220 (1965). Frustration of Congress's intent to protect the Act's "public rights," *Nat'l Licorice Co.*, 309 U.S. at 366, would be especially severe here, given that the Act's procedures are the sole mechanism for enforcing the NLRA, *Nathanson v. NLRB*, 344 U.S. 25, 27 (1953). La Grange's argument that an injunction would do the NLRB "no harm whatsoever," Mot. 17 (quoting *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021)), turns a blind eye to the Charging Party whom La Grange discharged and who must rely solely on the NLRB to address his claim and potentially make him whole.

Depriving employees of the sole mechanism to vindicate their NLRA rights cannot serve the public interest, especially when La Grange may obtain an adequate legal remedy if the Board ultimately issues an adverse decision. *See* above at 28.

## CONCLUSION

For the forgoing reasons, La Grange's motion for a preliminary injunction should be denied.

Respectfully submitted,

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, and*
 *Special Litigation Branch*

KEVIN P. FLANAGAN
*Deputy Assistant General Counsel*

MICHAEL DALE
*Trial Attorney*

s/ Tyler Wiese
TYLER WIESE
*Trial Attorney*
MN Bar No. 0392601 – *pro hac vice*
Tel: (952) 703-2891
Email: tyler.wiese@nlrb.gov
*Signed with permission of the Attorney-in-charge*

s/ Dalford Dean Owens, Jr.
DALFORD DEAN OWENS, JR.
*Supervisory Attorney*
S.D. Tex. ID No. 1132540
State Bar No. 24060907
Tel: (202) 273-2934
Email: dean.owens@nlrb.gov
*Attorney-in-charge for Defendants*

1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Facsimile: (202) 273-4244

Dated this 12th day of July, 2024.

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

<u>s/ *Dalford Dean Owens*</u>
DALFORD DEAN OWENS
*Supervisory Attorney*
S.D. Tex. ID No. 1132540
State Bar No. 24060907
1015 Half Street, S.E. - 4th Floor
Washington, DC 20003
Telephone: (202) 273-2934
Email: dean.owens@nlrb.gov

Dated this 12th day of July, 2024.