## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | |
|---|---|
| ENERGY TRANSFER LP and its subsidiary and employing entity LA GRANGE ACQUISITION, L.P.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>NATIONAL LABOR RELATIONS BOARD, a federal administrative agency, JENNIFER ABRUZZO, in her official capacity as the General Counsel of the National Labor Relations Board, LAUREN M. McFERRAN, in her official capacity as the Chairman of the National Labor Relations Board, MARVIN E. KAPLAN, GWYNNE A. WILCOX, and DAVID M. PROUTY, in their official capacities as Board Members of the National Labor Relations Board, and JOHN DOE in his official capacity as an Administrative Law Judge of the National Labor Relations Board,<br><br>　　　　Defendants. | Case No. 3:24-cv-00198-JVB |

## DEFENDANTS' COMBINED OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

NATURE AND STAGE OF PROCEEDING ...................................................................1

STATEMENT OF MATERIAL UNDISPUTED FACTS ............................................2

    I.    Statutory and regulatory background.....................................................................2

    II.    Procedural history ..................................................................................................5

LEGAL STANDARD ........................................................................................................9

SUMMARY OF ARGUMENT ......................................................................................10

ARGUMENT ....................................................................................................................11

    I.    A consistent line of precedent instructs that La Grange may receive only a declaration severing Board member and ALJ removal restrictions; the NLRB preserves its arguments that plaintiff fails to state cognizable removability claims and that injunctive relief is, in any event, jurisdictionally barred...........................11

        A.    La Grange should not receive a permanent injunction where, as here, severance is available. .................................................................................12

            i.    Declaratory relief is the proper form of relief where, as here, it sufficiently addresses a plaintiff's injury...........................................14

            ii.    The provisions La Grange challenges as unconstitutional can be severed. ..................................................................................................18

            iii.    To the extent that it seeks a broad permanent injunction against the ULP proceeding itself, La Grange does not meet the requirements for injunctive relief, and its request should be denied. ...........................20

        B.    The NLRB preserves its arguments that Count I and II of the Complaint fail on the merits because they fail to show that the challenged removal restrictions caused the alleged harm. ....................................................22

        C.    The NLRB preserves the argument that any injunctive relief in this case is barred by the Norris-LaGuardia Act because it involves or grows out of a labor dispute. .......................................................................................................24

    II.    This Court lacks subject-matter jurisdiction over La Grange's Seventh Amendment claim, and in any event, that claim lacks merit..................................26

A.   This Court lacks subject-matter jurisdiction over La Grange's Seventh Amendment claim. ..................................................................................... 27

B.   If the Court were to conclude that it has jurisdiction over La Grange's Seventh Amendment claim, the Court should grant summary judgment in favor of the Board because that claim lacks merit. ......................................... 32

   i.    Because NLRB proceedings effectuate public rights, the Seventh Amendment does not apply. ...................................................................... 33

   ii.   ULP proceedings involving *Thryv* remedies do not implicate the Seventh Amendment. ................................................................................. 34

       a.   The claims here have no basis in common law. ..................................... 35

       b.   The NLRB preserves the argument that the remedies at issue here are equitable in nature. .............................................................................. 36

C.   La Grange does not appear to seek a permanent injunction on its Seventh Amendment claim, but if it does, the injunction should be denied because La Grange fails to meet the other non-merits factors for injunctive relief. ............. 37

   i.    La Grange cannot show it will suffer irreparable harm. .......................... 37

   ii.   La Grange cannot show that any harm is imminent. ............................... 38

   iii.  The merged balance of hardships and public interest factors also weigh against a permanent injunction. ........................................................................... 39

III.   This Court lacks subject-matter jurisdiction over La Grange's combined-functions claim, which is meritless in any event. ...................................................... 40

A.   La Grange cannot establish district court jurisdiction on its combined-functions claim. ............................................................................................. 40

B.   La Grange's combined-functions claim fails on the merits. .......................... 40

C. La Grange does not seek, nor could it obtain, a permanent injunction on its combined-functions claim because it fails to meet the other non-merits factors for injunctive relief. ................................................................................. 41

CONCLUSION ............................................................................................... 42

CERTIFICATE OF SERVICE ....................................................................... 43

ii

**TABLE OF AUTHORITIES**

PAGE(S)

Cases

*Agostini v. Felton*,
   521 U.S. 203 (1997)..................................................................................................33

*Agwilines, Inc. v. NLRB*,
   87 F.2d 146 (5th Cir. 1936).............................................................................33, 36, 39

*Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*,
   309 U.S. 261 (1940)..................................................................................................39

*Amazon.com Servs., LLC v. Teamsters Amazon Nat'l Negotiating Comm.*,
   163 F.4th 624 (9th Cir. 2025)...............................................................................25, 26

*Atlas Roofing Co., Inc. v. Occupational Safety Health & Rev. Comm'n*,
   430 U.S. 442 (1977).............................................................................................32, 33

*Axon Enter., Inc. v. FTC*,
   598 U.S. 175 (2023)...........................................................................................passim

*Barr v. Am. Ass'n of Pol. Consultants, Inc.*,
   591 U.S. 610 ......................................................................................................12, 13

*Beacon Theatres, Inc. v. Westover*,
   359 U.S. 500 (1959)..................................................................................................14

*Blankenship v. FINRA*,
   No. 24-cv-3003, 2024 WL 4043442 (E.D. Pa. Sep. 4, 2024) .......................................30

*Camreta v. Greene*,
   563 U.S. 692 (2011)..................................................................................................32

*Care One, LLC v. NLRB*,
   166 F.4th 335 (2d Cir. 2026) .....................................................................................16

*Chacon v. Granata*,
   515 F.2d 922 (5th Cir. 1975)......................................................................................38

*Collins v. Yellen*,
   594 U.S. 220 (2021).................................................................................7, 18, 19, 23

*Comcast Corp. v. Dep't of Labor*,
   No. 1:24-CV-1401 (PTG/IDD), 2025 WL 2712424 (E.D. Va. Sep. 23, 2025)..............31

*Comm. on the Judiciary of the United States House of Representatives v. Miers*,
   542 F.3d 909 (D.C. Cir. 2008) ...................................................................................14

*Curtis v. Loether*,
   415 U.S. 189 (1974)..................................................................................................33

*Daniels Health Scis., LLC v. Vascular Health Scis., LLC*,
   710 F.3d 579 (5th Cir. 2013)......................................................................................39

*Dish Network Corp. v. NLRB*,
   953 F.3d 370 (5th Cir. 2020).....................................................................................5, 8

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975)..............................................................................................16, 17

*eBay, Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006) .................................................................................................. 10
*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) ...................................................................................................... 29
*Emporium Capwell Co. v. W. Addition Cmty. Org.*,
  420 U.S. 50 (1975) ............................................................................................. 22, 34
*Entergy Miss., Inc. v. NLRB*,
  810 F.3d 287 (5th Cir. 2015) .................................................................................... 34
*Exela Enter. Sols., Inc. v. NLRB*,
  32 F.4th 436 (5th Cir. 2023) ..................................................................................... 42
*Fibreboard Paper Prods. Corp. v. NLRB*,
  379 U.S. 203 (1964) .................................................................................................... 4
*Foster v. Wilson*,
  504 F.3d 1046 (9th Cir. 2007) .................................................................................. 35
*FTC v. Standard Oil Co. of Cal.*,
  449 U.S. 232 (1980) .................................................................................................. 21
*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989) ............................................................................................. 28, 38
*Green Valley Special Util. Dist. v. City of Schertz*,
  969 F.3d 460 (5th Cir. 2020) .................................................................................... 10
*Hannam Chain USA, Inc. v. NLRB*,
  No. 25-2896 (TJK), 2025 WL 3204539 (D.D.C. Nov. 17, 2025) .............................. 31
*Harris v. Bessent*,
  160 F.4th 1235 (D.C. Cir. 2025) ......................................................................... 16, 23
*Hiran Management, Inc. v. NLRB*,
  157 F.4th 719 (5th Cir. 2025) ......................................................................... 31, 32, 37
*Huff & Puffers, LLC v. U.S. Food & Drug Admin.*,
  No. 8:24-CV-02110, 2025 WL 1092696 (C.D. Cal. Feb. 27, 2025) .......................... 30
*Illumina, Inc. v. FTC*,
  88 F.4th 1036 (5th Cir. 2023) ................................................................................... 42
*Jarkesy v. SEC*,
  34 F.4th 446 (5th Cir. 2022) ........................................................................... 7, 32, 33
*Jarkesy v. SEC*,
  603 U.S. 109 (2024) ................................................................................. 33, 34, 35, 36
*John Doe #1 v. Veneman*,
  380 F.3d 807 (5th Cir. 2004) .................................................................................... 10
*Lemelson v. SEC*,
  793 F. Supp. 3d 1 (D.D.C. 2025) .............................................................................. 30
*Lodi Volunteer Rescue Squad*,
  374 NLRB No. 26, slip op. at 4 n.3 (2026) .......................................................... 30, 31
*Lukens Steel Co. v. United Steelworkers*,
  989 F.2d 668 (3d Cir. 1993) ..................................................................................... 25

*Lyng v. Nw. Indian Cemetery Protective Ass'n*,
  485 U.S. 439 (1988)........................................................................................32
*Lytle v. Household Mfg., Inc.*,
  494 U.S. 545 (1990)....................................................................................28, 38
*M.D. ex rel. Stukenberg v. Abbott*,
  907 F.3d 237 (5th Cir. 2018)...........................................................................39
*MDK Sociedad de Responsibilidad Limitada v. Proplant Inc.*,
  25 F.4th 360 (5th Cir. 2022)..............................................................................9
*Mertens v. Hewitt Associates*,
  508 U.S. 248 (1993)....................................................................................35, 36
*Millennia Hous. Mgmt. v. U.S. Dep't of Hous. & Urb. Dev.*,
  783 F. Supp. 3d 1051 (N.D. Ohio 2025)..........................................................30
*Myers v. Bethlehem Shipbuilding Corp.*,
  303 U.S. 41 (1938)..................................................................................5, 21, 28
*Nabors v. NLRB*,
  323 F.2d 686 (5th Cir. 1963)...........................................................................34
*Nat'l Licorice Co. v. NLRB*,
  309 U.S. 350 (1940).....................................................................................22, 34
*New Negro All. v. Sanitary Grocery Co.*,
  303 U.S. 552 (1938)........................................................................................25
*Nexstar Media, Inc. Grp. v. NLRB*,
  746 F. Supp. 3d 464 (N.D. Ohio 2024)...........................................................30
*Nken v. Holder*,
  556 U.S. 418 (2009)........................................................................................10
*NLRB v. Bell Aerospace Co.*,
  416 U.S. 267 (1974)........................................................................................41
*NLRB v. Colten*,
  105 F.2d 179 (6th Cir. 1939)...........................................................................35
*NLRB v. Deena Artware, Inc.*,
  361 U.S. 398 (1960).....................................................................................3, 38
*NLRB v. Jones & Laughlin Steel Corp.*,
  301 U.S. 1 (1937)......................................................................................passim
*Papasan v. Allain*,
  478 U.S. 265 (1986)..........................................................................................9
*Phelps Dodge Corp. v. NLRB*,
  313 U.S. 177 (1941)..................................................................................passim
*Poe v. Gerstein*,
  417 U.S. 281 (1974)........................................................................................14
*Ponte v. FDIC*,
  No. 24-cv-2379, 2024 WL 4730602 (D.D.C. Oct. 11, 2024) ...................28, 37
*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020)....................................................................14, 15, 18, 19

*Sheline v. Dun & Bradstreet Corp.*,
  948 F.2d 174 (5th Cir. 1991)..................................................................................9
*Space Expl. Techs. Corp. v. NLRB*,
  151 F.4th 761 (5th Cir. 2025)...........................................................................passim
*Space Expl. Techs. Corp. v. NLRB*,
  741 F. Supp. 3d 630 (W.D. Tex. 2024) .................................................................17
*Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*,
  160 F.4th 380 (3d Cir. 2025)................................................................................26
*Thryv, Inc.*,
  372 NLRB No. 22 (2022) .................................................................................passim
*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994)...........................................................................................11
*Trader Joe's Co. v. NLRB*,
  167 F.4th 766 (5th Cir. 2026)..........................................................................28, 29
*Traffic Jam Events, LLC v. FTC*,
  No. 21-60947, 2025 WL 1904566 (5th Cir. July 10, 2025).................................23, 24
*Trinseo Europe GMBH v. Kellogg Brown & Root*,
  165 F.4th 399 (5th Cir. 2026) .............................................................................10
*Tull v. United States*,
  481 U.S. 412 (1987).....................................................................................28, 36, 38
*Va. Elec. & Power Co. v. NLRB*,
  319 U.S. 533 (1943).........................................................................................34, 41
*VHS Acquisition Subsidiary No. 7 v. NLRB*,
  759 F. Supp. 3d 88 (D.D.C. 2024) ...................................................................passim
*Walmart, Inc. v. Chief Admin. L. Judge*,
  144 F.4th 1315 (11th Cir. 2025).....................................................................15, 19, 20
*WestRock Services, Inc.*,
  366 NLRB No. 157, slip op. at 3 (2018)..................................................................3
*Winter v. National Resources Defense Council*,
  555 U.S. 7 (2008).............................................................................................39
*Wulferic, LLC v. FDA*,
  793 F. Supp. 3d 830 (N.D. Tex. 2025) ...............................................................30, 31
*YAPP USA Auto. Sys., Inc. v. NLRB*,
  748 F. Supp. 3d 497 (E.D. Mich 2024)...................................................................31

Statutes

5 U.S.C. § 1202(d).................................................................................................4, 20
5 U.S.C. § 3105 ......................................................................................................3
5 U.S.C. § 7521(a) ...........................................................................................3, 11, 19
29 U.S.C. § 101 ...................................................................................................8, 24
29 U.S.C. § 113(a) ..................................................................................................25
29 U.S.C. § 113(c) ..................................................................................................25

29 U.S.C. § 153(a) .................................................................................... 4, 11, 18
29 U.S.C. § 153(d) ............................................................................................... 2
29 U.S.C. § 154(a) ............................................................................................... 3
29 U.S.C. § 157 ................................................................................................... 2
29 U.S.C. § 160(c) ...................................................................................... 3, 4, 39
29 U.S.C. § 160(e) ............................................................................................... 4
29 U.S.C. § 160(f) .......................................................................................... 5, 32
29 U.S.C. §§ 151–169 ................................................................................... 2, 22

Rules

Fed R. Civ. P. 56(a) ............................................................................................. 9
Federal Rule of Civil Procedure 56 ...................................................................... 9

Regulations

5 C.F.R. § 1201.137 ............................................................................................ 3

Other Authorities

*Severability First Principles*,
    109 Va. L. Rev. 1 (2023) ............................................................................... 19

## NATURE AND STAGE OF PROCEEDING

Defendants National Labor Relations Board, et al. (collectively, "NLRB") submit the following Combined Opposition to the Motion for Summary Judgment filed by Plaintiff Energy Transfer, LP and its subsidiary and employing entity La Grange Acquisition, L.P. (hereinafter, "La Grange") and Cross-Motion for Summary Judgment on the allegations in La Grange's Complaint. ECF 1 [Compl.].

In Counts I and II of the Complaint, La Grange alleges that the NLRB's five Board members and administrative law judges (respectively) are unconstitutionally insulated from removal. In Count III, La Grange alleges that the NLRB's adjudicative process violates the Seventh Amendment. Count IV alleges that the Board's purported combination of functions violates constitutional separation of powers and due process. As a remedy, La Grange seeks a declaration that the removal protections for Board members and ALJs are unconstitutional and that the NLRB proceeding against it violates its Seventh Amendment right to a jury-trial. Compl. at 16. It further seeks an order preliminarily enjoining the NLRB from proceeding on its administrative complaint and permanently enjoining the NLRB from implementing the statutory removal protections for Board members and administrative law judges. *Id*. at 17.

On July 29, 2024, this Court granted La Grange's Motion for Preliminary Injunction, halting the administrative ULP proceeding. ECF 49. The NLRB appealed, and this Court stayed further proceedings pending appeal. ECF 54. On August 19, 2025, the United States Court of Appeals for the Fifth Circuit affirmed that preliminary injunction along with two similar injunctions that had been entered by other district courts. *Space*

1

*Expl. Techs. Corp. v. NLRB*, 151 F.4th 761 (5th Cir. 2025) ("*SpaceX*"), *pet. for cert filed sub nom. Off & Pro. Emps. Int'l Union v. Space Expl. Techs. Corp.*, No. 25-622 (U.S. Nov. 21, 2025).

By order dated February 23, 2026, this Court granted La Grange's request to convert its motion for a preliminary injunction into a motion for summary judgment. ECF 70. In accord with that same order, the NLRB submits a filing combining its Opposition to Plaintiff's Motion for Summary Judgment and its own Cross-Motion for Summary Judgment.

## STATEMENT OF MATERIAL UNDISPUTED FACTS

### I.    Statutory and regulatory background

Section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 151–169, establishes that most private-sector employees have the right to, among other things, engage in "concerted activities for the purpose of collective-bargaining or other mutual aid and protection," as well as a corresponding "right to refrain from any and all such activities." 29 U.S.C. § 157. The NLRB[1] effectuates Section 7 rights in two principal ways: conducting union-representation elections under Section 9 of the Act, *id.* § 159, and processing allegations that an employer or union committed an unfair labor practice ("ULP") defined by Section 8, *id.* § 158.

NLRB regional offices, subject to the supervision and "final authority" of the NLRB's General Counsel, 29 U.S.C. § 153(d), investigate ULP charges and determine

---

[1] References to "the NLRB" are to the agency as a whole; references to "the Board" are to the five-member body serving as head of the agency.

whether to issue administrative complaints seeking remedies for ULP violations. Meritorious ULP cases are usually bifurcated into (1) a "liability" or "merits" phase— during which the regional office seeks to prove that a respondent violated the NLRA before an administrative law judge ("ALJ") and, eventually, the Board, subject to review by a court of appeals, and then (2) a subsequent "compliance" phase—during which controversies surrounding the remedies selected by the Board at the liability phase may also be adjudicated and judicially reviewed. *See NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 411 (1960) (Frankfurter, J., concurring) (describing bifurcated procedure).

At both stages, the NLRB employs administrative law judges ("ALJs") as initial adjudicators. ALJs are appointed in accordance with the Civil Service Reform Act, 5 U.S.C. § 3105, and the NLRA, 29 U.S.C. § 154(a); *WestRock Services, Inc.*, 366 NLRB No. 157, slip op. at 3 (2018). An ALJ's "proposed report, together with a recommended order," are reviewed by the NLRB's five-seat Board on any party's request. 29 U.S.C. § 160(c).

Removal of ALJs and Board members is defined by statute. With a handful of exceptions, 5 U.S.C. § 7521(a) states that "[a]n action may be taken against an [ALJ] . . . by the agency in which the [ALJ] is employed only for good cause established and determined by the Merit Systems Protection Board [MSPB] on the record after opportunity for hearing before the [MSPB]." Under this formulation, removing an ALJ requires two steps: (1) the NLRB's Board must bring an action to remove an ALJ, *see* 5 C.F.R. § 1201.137; and (2) the MSPB must determine that good

cause for removal has been established. Section 3(a) of the NLRA states that Board members "may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause." 29 U.S.C. § 153(a). A statute also restricts the removal of MSPB members. 5 U.S.C. § 1202(d) ("Any member may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office.").[2]

Under Section 10(c) of the NLRA, the Board is given "broad discretionary" authority to remedy unfair labor practices by ordering "such affirmative action . . . as will effectuate the policies of this Act." *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 215–16 (1964) (citing 29 U.S.C. § 160(c)). The Board has traditionally sought to "restor[e] the situation, as nearly as possible, to that which would have obtained but for the [unfair labor practice.]" *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 194 (1941). And consistent with these principles, the Board has often—with court approval—required parties who commit unfair labor practices to not only pay back wages, but also to compensate employees for other foreseeable pecuniary losses that are attributable to the party's unlawful conduct. *Thryv, Inc.*, 372 NLRB No. 22 (2022), slip op. at *11–13 (collecting cases), *enforcement denied on other grounds*, 102 F.4th 727 (5th Cir. 2024).

However, Board orders are not self-enforcing. Section 10(e) of the NLRA, 29 U.S.C. § 160(e), provides that the Board must seek enforcement of its orders from a court

---

[2] The NLRB is not defending the constitutionality of the tenure provisions at issue here.

of appeals to become effective against a respondent. *Dish Network Corp. v. NLRB*, 953 F.3d 370, 375 n.2 (5th Cir. 2020). Conversely, any "person aggrieved" may seek to set aside a Board order in a court of appeals under Section 10(f) of the NLRA. 29 U.S.C. § 160(f). District courts generally lack jurisdiction over matters arising under this statutory review scheme. *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 48 (1938), *cited in Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).

## II.    Procedural history

A La Grange employee ("Charging Party") filed a ULP charge, Case No. 16-CA-306440, with the NLRB's Region 16 office in Fort Worth, Texas alleging that La Grange had unlawfully transferred his position within the company in retaliation for the Charging Party's complaints about radioactive material and hazardous dust in work areas. Compl. ¶¶ 21–23. Thereafter, La Grange terminated the Charging Party, who then amended the ULP charge several times. *Id*. at ¶¶ 24–25, 28, 29. The amended charges included allegations that La Grange had terminated the Charging Party for raising health and safety concerns and in retaliation for filing the initial ULP charge. ECF 34-1 at 5–9.

The Regional Director of Region 16 found merit and issued an administrative complaint, alleging that La Grange had transferred and later terminated the Charging Party in retaliation for his protected activity under the Act and his filing of ULP charges.[3] ECF 32-1 [ULP Complaint] at 22–32; Compl. ¶ 32. Consistent with Board precedent and

---

[3] Consistent with the NLRB's normal practice prior to the start of ULP hearings, the ULP Complaint has been redacted to protect the privacy of the parties. *Modifying Interpretation of Section 102.117(b)(1)*, General Counsel Memo 15-07, available at https://apps.nlrb.gov/link/document.aspx/09031d4581d69633.

the remedial objectives set by the General Counsel at that time, the Regional Director

included in the ULP Complaint included a request to "make the Charging Party whole for

any other direct or foreseeable pecuniary harms and all reasonable consequential

damages incurred as a result of [La Grange's] unlawful conduct[.]"[4] *Id*. at ¶ 33. An ALJ

was originally scheduled to begin hearing this matter on July 30, 2024. *Id*. at ¶ 38. But

the hearing was postponed twice—first to October 29, 2024, and then indefinitely.

(attached as Exhibits A (ALJ Eleanor Laws' July 25, 2024 Order) and B (Regional

Director's Oct. 9, 2024 Order). To date, neither the ALJ nor the five-member Board has

taken any substantive action regarding La Grange's administrative case.

On June 27, 2024, La Grange filed the instant Complaint in this Court against

Defendants, alleging that: (1) the NLRB's five Board members are unconstitutionally

insulated from removal; (2) the NLRB's administrative law judges are also

unconstitutionally protected from removal; (3) the NLRB's adjudicative process violates

the Seventh Amendment; and (4) the Board's purported combination of functions violates

separation of powers and the due process clause. Compl. As a remedy, La Grange seeks a

declaration that the removal protections for Board members and ALJs are

unconstitutional and that La Grange has been deprived of its Seventh Amendment jury-

trial right. Compl. at 16. It further seeks an order preliminarily enjoining the NLRB from

---

[4] On July 15, 2024, the Regional Director issued an amendment to the ULP Complaint removing the reference to consequential damages, instead seeking only to "[m]ake the Charging Party whole for any other direct or foreseeable pecuniary harms incurred as a result of Respondent's unlawful conduct, with interest calculated in accordance with Board policy," consistent with *Thryv, Inc.,* 372 NLRB No. 22, slip op. at *13–14. ECF 33-1.

proceeding on its ULP Complaint and permanently enjoining the NLRB from implementing the statutory removal protections for Board members and administrative law judges. *Id*. at 17. The Complaint does not seek permanent injunctive relief for either the Seventh Amendment claim in Count III or the combined-functions claim in Count IV.

On July 3, 2024, La Grange filed a Motion for Preliminary Injunction to halt the administrative ULP proceeding. ECF 21 [Mot.]. The NLRB responded to the Motion, and this Court held a preliminary injunction hearing on July 16, 2024. ECF 39 [Order].

On July 29, 2024, the Court granted La Grange's motion on the grounds that the ALJs' removal protections warranted a preliminary injunction.[5] Order. Specifically, the Court found that La Grange was likely to succeed on the merits of its claim that the ALJs' removal protections were unconstitutional, citing *Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd on other grounds*, 603 U.S. 109 (2024). Order at 4–6. The Court also found that La Grange demonstrated causal harm by alleging that it would be compelled to participate in an invalid administrative process. *Id*. at 9. The Court cited *Collins v. Yellen*, 594 U.S. 220 (2021), for the proposition that where removal-restriction claims seek relief before an insulated actor acts, *Collins* causal-harm requirement is readily satisfied because La Grange's "alleged injury is having to participate in a constitutionally defective administrative process." Order at 13. Similarly, the Court found

---

[5] The Court did not address La Grange's remaining arguments regarding the constitutionality of the NLRB's structure; specifically, that NLRB Board members are unconstitutionally insulated from removal, that the NLRA's proceedings violate the Seventh Amendment, or that the NLRB's combined functions violate the separation of powers and due process. *See* Order at 4.

7

that La Grange would suffer irreparable harm because it would be subjected to a proceeding by an unaccountable ALJ, and that the balance-of-hardships and public-interest factors weighed in favor of granting an injunction. *Id*. 11–13. Finally, the Court found that "while severing the removal provisions may eventually be the proper remedy on the merits, its potential availability has no bearing on La Grange's right to preliminary relief." *Id*. at 10. The NLRB appealed the District Court's Order on August 16, 2024. ECF 51.

On August 26, 2024, the Court granted the NLRB's Unopposed Motion to Stay Proceedings Pending Appeal of the Court's order on the preliminary injunction. ECF 53 (Unopposed Motion to Stay); ECF 54 (Order Granting Mot. to Stay).

The United States Court of Appeals for the Fifth Circuit consolidated the NLRB's appeal in this case with two others in which district courts had entered preliminary injunctions halting NLRB proceedings on removability grounds. *See Space Expl. Techs. Corp. v. NLRB*, No. 24-50627, Dkt. No. 41-1. During the consolidated appeal, after the change in administration, the NLRB informed the Fifth Circuit that it would no longer defend the constitutionality of the challenged removal restrictions. *SpaceX*, 151 F.4th at 766, n. 4. Ultimately, the Fifth Circuit affirmed the preliminary injunctions entered by the respective district courts. *Id.*, 151 F.4th 767.

Specifically, the Fifth Circuit held that the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq., did not bar the district courts from issuing injunctive relief in cases challenging the Board's structure, finding that the claim did not "grow out of" a labor dispute. *Id*. at 12. The Court of Appeals also held that a party seeking prospective relief like an

injunction need not demonstrate causal harm, finding that only "backward-looking relief requires a causal link between the violation and the outcome." *Id.* at 28. The Fifth Circuit further concluded that the challenged removal restrictions were likely unconstitutional under extant law. *Id.* at 20–22. Finally, the Court of Appeals concluded that severance was premature at the preliminary-injunction stage, and instead "belongs to the merits phase, when the court considers final relief." *Id.* at 15–17. Mandate issued on October 14, 2025.

Upon remand to the District Court, the parties filed a joint status report proposing a schedule for summary judgment briefing. ECF 69. This Court issued an Order with the summary judgment briefing schedule on February 23, 2026. ECF 70.

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *MDK Sociedad de Responsibilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 367–68 (5th Cir. 2022). Summary judgment is particularly appropriate where "the only issue before the court is a pure question of law." *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991). While parties may stipulate undisputed facts, legal conclusions are questions of law for a court to decide and may not be stipulated. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Where a plaintiff seeks a permanent injunction, simply prevailing on the merits is not enough to prevail in a motion for summary judgment. Rather, a prevailing party must still show: "(1) that it has suffered [or will suffer] an irreparable injury; (2) that remedies

9

available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Trinseo Europe GMBH v. Kellogg Brown & Root*, 165 F.4th 399, 423 (5th Cir. 2026) (quoting *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). The final two factors "merge when the government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Deciding whether "to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay*, 547 U.S. at 391. But "[d]iscretion is not whim." *Id.* at 395 (Roberts, C.J., concurring, joined by Scalia & Ginsburg, JJ.). In exercising its discretion, a district court should be mindful of "the basic principle of justice that like cases should be decided alike." *Id.* And a court "must narrowly tailor an injunction to remedy the specific action which gives rise to the order." *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 478 n.39 (5th Cir. 2020) (quoting *John Doe #1 v. Veneman*, 380 F.3d 807, 818 (5th Cir. 2004)).

## SUMMARY OF ARGUMENT

With respect to Counts I and II, the NLRB urges the Court to issue a declaratory judgment severing the statutory tenure protections for NLRB Board members and NLRB ALJs. Because a declaratory judgment would fully redress injuries resulting from those claims, the injunctive relief that La Grange seeks is foreclosed. Furthermore, limiting the remedy to severance by means of a declaratory judgment would accord with a long line

10

of Supreme Court and lower court precedent addressing unconstitutional statutory removal restrictions.

Count III, which asserts a Seventh Amendment claim, and Count IV, which asserts a derivative combined-functions claim, should be dismissed for a lack of subject-matter jurisdiction, or alternatively, denied on the merits. These claims do not satisfy the jurisdictional test set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), and *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175 (2023), and so must be exhausted through the NLRA's statutory review process. On the merits, these claims are unavailing because ULP proceedings vindicate public rights, which an administrative agency like the NLRB may adjudicate on its own and without arrogating legislative or judicial power.

## ARGUMENT

**III.  A consistent line of precedent instructs that La Grange may receive only a declaration severing Board member and ALJ removal restrictions; the NLRB preserves its arguments that plaintiff fails to state cognizable removability claims and that injunctive relief is, in any event, jurisdictionally barred.**

La Grange asserts that the removal restrictions applicable to NLRB members in Section 3(a) of the NLRA, 29 U.S.C. § 153(a), violate Article II of the Constitution. Compl. ¶¶ 29–57; Mot. at 6–8. And La Grange asserts that the NLRB's adjudicatory scheme is unconstitutional because 5 U.S.C. § 7521(a) establishes for NLRB ALJs "at least two layers of for-cause protections" that prevent the President from exercising his Article II authority. Compl. ¶¶ 58–74; Mot. at 8–10. La Grange does not argue that ALJs would be unconstitutionally insulated from removal absent multiple layers of removal

11

restrictions, and La Grange admits that ALJs are inferior officers and thus may be removed by principal officers appointed by the President. Compl. ¶¶ 59, 66; Mot. at 8.

As explained below, severance is the only form of final relief to which La Grange is entitled on its removability claims. Furthermore, in light of the Fifth Circuit's decision in *SpaceX*, the NLRB preserves for further review its arguments that La Grange is not entitled to any remedy absent a showing of causal harm and that the Norris-LaGuardia Act jurisdictionally precludes injunctive relief here.

### A. La Grange should not receive a permanent injunction where, as here, severance is available.

The NLRB does not defend the constitutionality of the challenged removal restrictions, consistent with the stated views of the Department of Justice.[6] In addition, the Fifth Circuit has already concluded that those restrictions are likely unconstitutional under extant law. *SpaceX*, 151 F.4th at 775–78. Regardless, it is well established that the proper remedy in cases such as the instant case would be to sever the offending provisions, rather than "[p]ermanently enjoining Defendants from implementing or carrying out" the challenged tenure protections. Compl. at 17.

There is a "strong presumption" in favor of severability where certain provisions of a law are found unconstitutional. *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S.

---

[6] *See* Letter from Sarah M. Harris, Acting Solicitor General, to the Honorable Mike Johnson, Speaker of the United States House of Representatives (Feb. 20, 2025), https://www.justice.gov/oip/media/1390336/dl?inline; Letter from Sarah M. Harris, Acting Solicitor General, to the Honorable Mike Johnson, Speaker of the United States House of Representatives (Feb. 12, 2025), https://www.justice.gov/oip/media/1389526/dl?inline.

610, 625, 627 (opinion of Kavanaugh, J.) (stating that there is a "strong presumption of severability" under which courts "invalidate[] and sever[] unconstitutional provisions from the remainder of the law rather than raz[e] whole statutes or Acts of Congress."

As explained in *Barr*, "[t]he Court's power and preference to partially invalidate a statute in that fashion has been firmly established since *Marbury v. Madison*," in which the "Judiciary Act did not contain a severability clause," "[b]ut the Court did not proceed to invalidate the entire Judiciary Act." 591 U.S. at 626. Rather, "the Court's remedial preference after finding a provision of a federal law unconstitutional has been to salvage rather than destroy the rest of the law passed by Congress and signed by the President." *Id*. In this way, the Court's "precedents reflect a *decisive preference* for surgical severance rather than wholesale destruction, even in the absence of a severability clause." *Id*. (emphasis added).

Therefore, as explained below, this Court should sever the challenged removal restrictions because (1) there is no need for an injunction when declaratory relief is sufficient to resolve the constitutional claim; (2) the statutes in question here are severable; and (3) to the extent La Grange wants a broader injunction preventing the ULP proceeding from going forward at all, it cannot get that relief because La Grange hasn't shown that it would otherwise suffer irreparable harm or that the equities favor such an injunction.

13

### i.    Declaratory relief is the proper form of relief where, as here, it sufficiently addresses a plaintiff's injury.

It is a baseline principle of equity that injunctive relief is not appropriate where a declaration would adequately redress the plaintiff's injury. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 509 (1959) (availability of declaratory judgment "necessarily affects the scope of equity"). And this principle applies with greater force when the government is the adverse party because courts have "long presumed that officials of the Executive Branch will adhere to the law as declared by the court." *Comm. on the Judiciary of the United States House of Representatives v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008). As such, the Supreme Court has recognized in similar instances that injunctive relief is not necessary where it is "anticipated that [the government] would respect the declaratory judgment." *Poe v. Gerstein*, 417 U.S. 281, 281 (1974).

Here, any injury to La Grange attributable to statutory provisions restricting the removal of NLRB Board members and ALJs would be fully remedied by a declaration that those removal restrictions are inoperable as to those officers. This approach fully accords with how the Supreme Court has treated similar structural constitutional challenges. In *Seila Law LLC v. CFPB*, the Supreme Court found the removal protections for the Director of the Consumer Financial Protection Bureau (CFPB) unconstitutional. 591 U.S. 197, 232 (2020). As a result, the Supreme Court severed the Director's removal protection, stating that "[t]he provisions of the [statute] bearing on the CFPB's structure

14

and duties remain fully operative without the offending tenure restriction," and that

"[t]hose provisions are capable of functioning independently." *Id.* at 235.

Similarly, in *Free Enterprise*, the Court found the multiple layers of removal

restrictions for members of the Public Company Accounting Oversight Board

("PCAOB") unconstitutional but rejected the plaintiffs' attempt to enjoin the PCAOB's

operations. 561 U.S. at 508, 513.[7] As such, *Free Enterprise* rejected relief that mirrors

what La Grange seeks in its Motion for Summary Judgment. *Compare* 561 U.S. at 508,

513 *with* Mot. at 2. Instead, the Court severed the offending statutory provisions, leaving

PCAOB members subject to removal at will. *Id.* at 513–14. Like the plaintiffs in that

case, La Grange here is "not entitled to broad injunctive relief against the Board's

continued operations." *Id.* at 513.

Recent federal court cases have applied—without hesitation—the Supreme

Court's preferred remedy of severance to statutes restricting the removal of inferior and

principal officers. *See Walmart, Inc. v. Chief Admin. L. Judge*, 144 F.4th 1315, 1348–49

(11th Cir. 2025) (vacating permanent injunction prohibiting adjudication of "20

complaints against Walmart" because, among other reasons, the statute restricting

---

[7] La Grange cited *Free Enterprise* in its preliminary injunction briefing to support its argument that severance required action from "the Legislature, not the Judiciary." ECF 33 at 9–10 (Reply Br.). However, La Grange took that statement out of context. In reality, the Court found the PCAOB members' tenure protections unconstitutional, but still *rejected* the plaintiff's efforts to enjoin the PCAOB's proceedings. The Court severed the offending provisions instead. Because the Court was able to keep the statute "fully operative as a law" without the removal provisions there was no need to "blue-pencil" the statute, and regardless, such "editorial freedom" belonged to the Legislature, not the Judiciary. 561 U.S. at 509. The *Free Enterprise* plaintiff's request for broader relief was denied and so should La Grange's here.

removal of ALJs is "easily severable"); *Harris v. Bessent*, 160 F.4th 1235, 1257 (D.C. Cir. 2025) (declining to enforce removal restrictions applicable to NLRB members and MSPB members and holding that the appropriate remedy was to "disregard the [applicable] statutory removal restrictions"); *reh'g denied*, No. 25-5037, 2026 WL 88114 (D.C. Cir. Jan. 9, 2026), *and reh'g denied sub nom. Wilcox v. Trump*, No. 25-5057, 2026 WL 246902 (D.C. Cir. Jan. 28, 2026); *VHS Acquisition Subsidiary No. 7 v. NLRB*, 759 F. Supp. 3d 88, 100–01 (D.D.C. 2024) (severing removal restrictions applicable to NLRB ALJs since "it seems clear to the Court" that severance would work), *appeal docketed*, No. 25-5006 (D.C. Cir. Jan. 22, 2025); *see also Care One*, *LLC v. NLRB*, 166 F.4th 335, 349 (2d Cir. 2026) (holding that "the only relief" to which the plaintiffs challenging NLRB ALJs' removal restrictions "would be entitled would be a declaratory judgment severing the unconstitutional removal protections from the broader statutory scheme").

La Grange's argument that a declaratory judgment is inadequate rests on the premise that without an injunction "it will have been subject to unconstitutional proceedings." Mot. at 8. But this position, advanced initially by La Grange while seeking a preliminary injunction, has much less salience at the summary judgment stage, where the parties are seeking a final judgment. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975) ("But prior to final judgment there is no established declaratory remedy comparable to a preliminary injunction . . . .").

Indeed, in granting La Grange a preliminary injunction providing "relief from the impending harm" of a scheduled ULP hearing, this Court held that consideration of severance was premature because a "declaration would not take place until final

16

judgment." Order at 10. At the same time, however, this Court correctly acknowledged that when declaratory relief is available, "severing the removal provisions may eventually be the proper remedy on the merits." *Id.*; *accord Space Expl. Techs. Corp. v. NLRB*, 741 F. Supp. 3d 630, 638 (W.D. Tex. 2024) (recognizing that "potential severance of unconstitutional portions of the statute" might "defeat a *permanent* injunction awarded after . . . summary judgment . . . in favor" of the plaintiff) (italics in original), *injunction dissolved and case voluntarily dismissed*, No. 6:24-cv-00203-ADA (W.D. Tex. Jan. 5, 2026). The Fifth Circuit analysis of severance in *SpaceX* is consistent with that contained in this Court's preliminary injunction order. 151 F.4th at 772–73 (distinguishing the final judgment context, in which the Supreme Court has employed severance as a remedy, from the preliminary injunction context). As a result, La Grange cannot use the court's rationale concerning the viability of severance at the preliminary-relief stage as a shield at the final-relief phase.[8]

The injury that the Fifth Circuit in *SpaceX* and this Court found irreparable, and thus sufficient to warrant a preliminary injunction, is immediately remedied at final judgment by declaratory relief ordering severance. Put another way, once the court severs the offending removal restrictions, the agency process to which La Grange will be

---

[8] In fact, La Grange seems to acknowledge that severance is a proper outcome at final judgment. *See* ECF 33 at 8 ("Severability will not resolve Plaintiff's need for a preliminary injunction now. Defendants' argument that 'severing statutory removal restrictions found unconstitutional would remedy the alleged violations' presumes this Court will eventually declare ALJs and Board Members to be unconstitutionally insulated from removal. While La Grange argues for and certainly believes that will be the outcome, the Court has not yet made that determination." (citation omitted)).

17

subjected would not be presided over by an official unconstitutionally insulated from presidential supervision. And, as shown below, the challenged restrictions are readily severable, thus defeating the need for any injunctive relief.

### ii. The provisions La Grange challenges as unconstitutional can be severed.

Severance is a declaration by the Court that identifies a portion of a statute that is unconstitutional—and thus inoperable—and defines what the law is in the absence of that inoperable piece. An unconstitutional provision "is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provisions from the moment of the provision's enactment)." *Collins*, 594 U.S. at 259. Courts employ severance as a remedy because "one section of a statute may be repugnant to the Constitution without rendering the whole act void," particularly when there is no "strong evidence" to rebut the presumption "that Congress did not intend the validity of the statute in question to depend on the validity of" a single unconstitutional removal restriction. *Seila L.*, 591 U.S. at 233–34 (citation modified).

The tenure protections La Grange challenges here could be severed in multiple ways. First, with respect to NLRB Board members,[9] the Court could sever the clause "upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause" from 29 U.S.C. § 153(a), which would then simply provide, in pertinent part: "Any member of the Board may be removed by the President." So severed, the statute

---

[9] Currently, 29 U.S.C. 153(a) states: "Any member of the Board may be removed by the President, upon notice and hearing, for neglect of duty or malfeasance in office, but for no other cause."

18

would recognize the President's unfettered authority to remove Board members at will. This was the approach taken by the Supreme Court when dealing with the unconstitutional removal restriction applicable to a principal officer in *Seila Law*. 591 U.S. at 232; *see also Collins*, 594 U.S. at 251 ("A straightforward application of our reasoning in *Seila Law* dictates the result here.").

Second, with respect to the multiple layers of tenure protections for ALJs, the Court could sever from 5 U.S.C. § 7521(a), the language "only for good cause and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board," so that for NLRB ALJs "[a]n action may be taken against an [ALJ] by the [National Labor Relations Board]."[10] *See Walmart*, 144 F.4th at 1349 (denying permanent injunction, finding that "[s]evering the MSPB's 'good cause' determination in § 7521(a) would not render the rest of the [statutory] framework incapable of functioning."); *accord VHS*, 759 F. Supp. 3d at 101 (citing William Baude, *Severability First Principles*, 109 Va. L. Rev. 1, 8–9, 18 (2023)).

Alternatively, as the Eleventh Circuit has observed with respect to the ALJ-removal statute, striking the removal restrictions applicable to principal officers could also "obviate [a challenger]'s second layer argument." *Walmart*, 144 F.4th at 1345 n.6. So, in combination with severance of the removal restrictions applicable to NLRB Board members, the Court could follow the rationale of the D.C. Circuit's decision in

---

[10] Under 5 U.S.C. § 7521(a), "An action may be taken against an administrative law judge appointed under section 3105 of this title by the agency in which the administrative law judge is employed only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board."

*Harris*, and sever 5 U.S.C. § 1202(d) so that it reads "Any member [of the MSPB] may be removed by the President." This would render inoperable the provision in that section stating that MSPB members are removable "only for inefficiency, neglect of duty, or malfeasance in office." Under this formulation, the MSPB would retain a statutory role in reviewing personnel actions against ALJs, while vesting final authority over those decisions in principal officers removable at will by the President.[11] Because under this scheme NLRB Board members would also be removable at will, NLRB ALJs would have one (but only one) level of tenure protection.

Accordingly, there are discrete statutory provisions that this Court can declare inoperable to fully resolve La Grange's removal-restriction challenges.

### iii.   To the extent that it seeks a broad permanent injunction against the ULP proceeding itself, La Grange does not meet the requirements for injunctive relief, and its request should be denied.

La Grange does not explicitly request permanent injunctive relief beyond a permanent injunction against "implementing or carrying out the unconstitutional removal-protection provisions." Compl. at 17. However, to the extent La Grange is also seeking a permanent injunction preventing the NLRB from holding any proceedings to adjudicate the ULP Complaint, it cannot meet the requirements for such relief.

---

[11] To be sure, however, severing NLRB ALJs' "good cause" tenure protections is the more straightforward solution. It would not only cure the constitutional infirmity that La Grange alleges but also align with the approach taken by other courts, *see Walmart*, 144 F.4th at 1345; *VHS*, 759 F. Supp. 3d at 101 ("*Free Enterprise Fund* instructs that the Constitution displaces the bottom-layer removal restriction."), and avoid the need to address removal restrictions applicable to an agency that La Grange did not name as a party to this litigation.

20

As discussed above in Section II.A, a declaratory judgment severing the challenged removal restrictions would redress the injury La Grange seeks to avoid: being haled into an unconstitutionally structured administrative forum. Once the complained-of removal restrictions are rendered inoperative, La Grange no longer has any argument that it is being subjected to an unconstitutionally insulated decisionmaker. And under long-standing Supreme Court precedent, its claim that the proceeding itself imposes irreparable harm must then be rejected. *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980); *see Myers*, 303 U.S. at 51 (rejecting argument that "the mere holding of the prescribed administrative hearing would result in irreparable damage"), *cited in Axon*, 598 U.S. at 192.

Additionally, the merged balance-of-hardships and public-interest factor weighs against a permanent injunction barring the NLRB "from subjecting La Grange to unconstitutionally structured administrative proceedings." Compl. at 17. Regardless of what this Court decides about severance, the harm that a permanent injunction would visit upon the government and the general public would be substantially greater than any harm to La Grange from having to appear before the NLRB.[12]

Initially, if the President wanted the adjudication against La Grange to go forward—and La Grange cites no evidence suggesting otherwise—a permanent

---

[12] This Court found that the balance of equities favored La Grange at the preliminary-injunction stage because the effect of a *preliminary* injunction, contrary to the permanent injunction La Grange may seek here, is "only temporary," leaving open the possibility that the NLRB "may then continue with the here-enjoined administrative proceeding." Order at 12-13. This is clearly not the case with a permanent injunction, which would

21

injunction ending the proceeding would frustrate the President's will. Clearly that cannot be the correct result, especially since the rationale underlying La Grange's removability challenges is the need to preserve, not subvert, the President's Article II authority. Compl. ¶¶ 39–74. Moreover, the declared public policy of the United States is to protect the rights established by Section 7 of the NLRA in order to "safeguard[] commerce from injury, impairment, or interruption." 29 U.S.C. § 151. And the NLRB's ULP machinery is the sole legal mechanism to vindicate those public rights. *See Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 364 (1940) ("The Board asserts a public right vested in it as a public body, charged in the public interest with the duty of preventing unfair labor practices."). The NLRA protects these public rights "not for their own sake but as an instrument of the national labor policy." *Emporium Capwell Co. v. W. Addition Cmty. Org.*, 420 U.S. 50, 62 (1975). Permanently enjoining the NLRB from adjudicating the ULP case against La Grange would harm not only the employees who are the direct victims of La Grange's alleged ULPs, but also the public which relies on the NLRB as the sole backstop to prevent this and other labor disputes from disrupting "the free flow of commerce." 29 U.S.C. § 151.

**B. The NLRB preserves its arguments that Count I and II of the Complaint fail on the merits because they fail to show that the challenged removal restrictions caused the alleged harm.**

La Grange's removability claims suffer another defect, but one that is not recognized in this posture by extant circuit precedent. Thus, as summarized below, the

---

have the practical effect of immunizing La Grange from liability for its alleged violations of the NLRA.

NLRB preserves for further review its argument that La Grange has failed to state a claim by showing that the removal restrictions it challenges in Count I and II of the Complaint have caused or will cause it to suffer harm.

In *Collins*, the Supreme Court held that in order to obtain relief in removal restriction challenges, plaintiffs need to show that they are harmed from the challenged removal provisions. *See* 594 U.S. at 257–60. Such harm can be shown in two ways: (1) if the President "had attempted to remove [an agency official] but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal;" or (2) if the President "had made a public statement expressing displeasure with actions taken by [an agency official] and asserted that he would remove [the official] if the statute did not stand in the way." *Id*. at 259–60.

La Grange has failed to show that the removal restrictions it challenges in Count I and II of the Complaint have caused or will cause it to suffer harm. To the contrary, the D.C. Circuit recently upheld the President's authority to remove Board members without cause, notwithstanding the removal restriction appearing in the NLRA. *Harris*, 160 F.4th at 1251–54. And La Grange does not claim that either the Board or the President have expressed a frustrated desire to remove a sitting NLRB ALJ.

All of this would normally be sufficient to enter judgment in the NLRB's favor on such claims. However, in *SpaceX*, the Fifth Circuit held that *Collins* applies only to cases in which plaintiffs seek "retrospective relief from final agency action." 151 F.4th at 779–80; *see Traffic Jam Events, LLC v. FTC*, No. 21-60947, 2025 WL 1904566, at *3–4 (5th Cir. July 10, 2025) (denying petition for review raising removability arguments for lack

23

of causal harm). Thus, the Fifth Circuit determined that plaintiffs seeking prospective relief—as La Grange does here—are not required to demonstrate a causal link between purportedly unconstitutional removal provisions and challenged agency action. *SpaceX*, 151 F. 4th at 780.[13]

The NLRB acknowledges that *SpaceX* controls as to the applicability of *Collins* in this context but preserves for further review its arguments that *SpaceX* was wrongly decided, as the dissenting judge on the panel explained, *id*. at 781–86 (Weiner, J., dissenting), and that *Collins* applies with equal force to plaintiffs like La Grange that seek prospective relief. *See* ECF 32 (Defs.' Opp. to PI), at 8–11.

### C. The NLRB preserves the argument that any injunctive relief in this case is barred by the Norris-LaGuardia Act because it involves or grows out of a labor dispute.

Even if injunctive relief were necessary to provide La Grange complete relief (which is not the case), the NLRB preserves for further review its argument that the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.* ("NLGA"), jurisdictionally bars such relief here because this case involves or grows out of a labor dispute. *See id.* § 101. As demonstrated by the ULP Complaint, there is a labor dispute between La Grange and the Charging Party regarding the Charging Party's demotion and discharge in response to his concerted complaints about the wages, hours, and working conditions of La Grange's

---

[13] Similarly, this Court's Order granting La Grange's motion for a preliminary injunction, decided before the Fifth Circuit's *SpaceX* decision, also found that *Collins'*s causal-harm requirement is inapplicable where removal-restriction claims seek relief before an insulated actor acts. Order at 9. The Court held that "La Grange's alleged injury is having to participate in a constitutionally defective administrative process. And it's the removal provisions that create the constitutional defect." *Id*.

employees. Specifically, the Charging Party brought employees' health and safety concerns regarding the presence of naturally-occurring radioactive material and hazardous dust in work areas to management. *See, e.g.*, ULP Complaint at ¶¶ 6–11; 29 U.S.C. § 113(c) (a "'labor dispute' includes any controversy concerning terms or conditions of employment"). This case involves or grows out of that labor dispute within the meaning of 29 U.S.C. § 113(a) because La Grange brought the instant action as a respondent to the ULP Complaint—which itself is based on the Charging Party's ULP charges—that would be adjudicated in proceedings before the NLRB. *See Amazon.com Servs., LLC v. Teamsters Amazon Nat'l Negotiating Comm.*, 163 F.4th 624, 631–32 (9th Cir. 2025). Additionally, the Supreme Court has construed the NLGA to cover cases other than those between employer and employee, like this one. *See, e.g.*, *New Negro All. v. Sanitary Grocery Co.*, 303 U.S. 552, 560–61 (1938) (reading the Act to "embrace controversies other than those between employers and employees; between labor unions seeking to represent employees and employers; and between persons seeking employment and employers."). And although there are limited statutory exceptions to the NLGA, La Grange cannot show that any apply here. *Lukens Steel Co. v. United Steelworkers*, 989 F.2d 668, 675–78 (3d Cir. 1993) (exceptions only "to accommodate the strong federal policy in favor of arbitration" and "to reconcile the [Norris LaGuardia Act] with other federal statutes.").

Nevertheless, the Fifth Circuit in *SpaceX* determined that the NLGA does not apply to suits against the NLRB alleging that Board members and ALJs are improperly insulated from presidential removal and thus does not act as a bar to injunctive relief. 151

25

F.4th at 769–70. The Court of Appeals also applied the three-factor jurisdictional test announced in *Thunder Basin* and determined that "structural challenges" are beyond the reach of the NLGA's "jurisdictional bar." 151 F.4th at 771–72.

Recognizing that this Court is bound by *SpaceX*, the NLRB respectfully states here its position that *SpaceX*'s NLGA analysis is palpably wrong and aberrant given the consensus of other courts to have considered the issue. Recent decisions from the Ninth and Third Circuits correctly recognize that the NLGA forecloses injunctive relief in suits like La Grange's here. *See Spring Creek Rehab. & Nursing Ctr. LLC v. NLRB*, 160 F.4th 380, 386–88 (3d Cir. 2025) (explaining why *SpaceX* "cannot be squared" with Supreme Court precedent); *id*. at 388 n.6 ("The *Thunder Basin* factors are thus off point in addressing the jurisdictional question here."); *Amazon.com*, 163 F.4th at 630 (explaining that *SpaceX* "flouts" canons of statutory construction "by ignoring the different statutory descriptions for the case and the underlying dispute."); *id*. at 635 (concluding that *SpaceX*'s "invocation of *Thunder Basin* was misplaced" because "the explicit text of the [NLGA] bars jurisdiction to issue injunctions.").

However, because La Grange is not entitled to injunctive relief anyway for the reasons set forth above, the question of whether this Court even has jurisdiction to award such relief is somewhat academic even if the Court must satisfy itself of its jurisdiction.

IV.    **This Court lacks subject-matter jurisdiction over La Grange's Seventh Amendment claim, and in any event, that claim lacks merit.**

La Grange's claim that the NLRB's proceedings violate its Seventh Amendment right to a trial by jury (Compl. ¶¶ 75–98), as set forth in Count III of the Complaint, fails.

26

First, this court lacks jurisdiction to entertain this challenge as it is not one of structural claims exempt from administrative exhaustion under *Axon*. Relatedly, the claim is speculative and unripe because it is premised on potential action that may never come to pass, specifically, an order remedying "direct or foreseeable pecuniary harms" to employees beyond loss of pay. *See Thryv,* 372 NLRB No. 22. Finally, the claim lacks merit because the Board's proceedings are within the public-rights exception to the Seventh Amendment, and in any event do not involve legal claims.

### A. This Court lacks subject-matter jurisdiction over La Grange's Seventh Amendment claim.

La Grange's Seventh Amendment claim rests on the possibility that, at some future date, the Board order *may* require it to reimburse the Charging Party for certain foreseeable losses, as part of a make-whole remedy under the principles set forth in *Thryv,* 372 NLRB No. 22. As a preliminary matter, La Grange cannot show that this Court has subject-matter jurisdiction over this claim because it meets none of the three factors the Supreme Court considered in *Axon* for non-statutory review. *Axon*, 598 U.S. at 185-86. Applying factors earlier developed in *Thunder Basin*, *Axon* asks: (1) does "precluding district court jurisdiction . . . foreclose all meaningful judicial review"; (2) is the challenge "wholly collateral" to the agency's normal proceedings; and (3) does the claim fall within the "agency's expertise?" 598 U.S. at 186 (citation modified). None of the three *Axon* factors support jurisdiction here.

The "meaningful review" factor does not support subject-matter jurisdiction in this Court. That factor's purpose is to ensure that district courts have subject-matter

27

jurisdiction over "structural constitutional claims" when relief "would come too late to be meaningful" if those claims had to proceed through the normal statutory review channels. *Id.* at 191. Here, La Grange's Seventh Amendment claim challenges a particular subset of remedies that *may* result at the end of a specific administrative proceeding. As such, the claim is not a "structural" challenge attacking the very nature of the agency, or the Board's power to issue any remedial order. *See id.* at 191–92. The NLRA's statutory review scheme, which channels judicial review of final Board orders to the courts of appeals, is sufficient to address this claim. *See Myers*, 303 U.S. at 49 ("[A]ll questions of constitutional right or statutory authority are open to examination by the [reviewing] court."); *see also Ponte v. FDIC*, No. 24-cv-2379, 2024 WL 4730602, at *8 (D.D.C. Oct. 11, 2024) ("It is well-established that the harm resulting from the denial of a jury trial can be remedied on appeal, even after the case has already been tried—the reviewing court simply orders a new trial.") (citing *Tull v. United States*, 481 U.S. 412, 427 (1987), *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 37, 64–65 (1989), and *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 552–53 (1990)). Indeed, the remedies awarded in *Thryv* itself were set aside by the Fifth Circuit in a statutory review proceeding that occurred after the liability stage of the Board's bifurcated process. *Thryv, Inc. v. NLRB*, 102 F.4th 727, 748 (5th Cir. 2024). This alone is determinative under the *Thunder Basin*'s "meaningful review" factor.[14]

---

[14] A recent Fifth Circuit case further supports the argument that the NLRA provides La Grange with meaningful review of its Seventh Amendment claim. In *Trader Joe's Co. v. NLRB*, 167 F.4th 766, 791 (5th Cir. 2026), the Fifth Circuit found that a challenge to

Neither of the remaining *Axon* factors suggests that the district court has subject-matter jurisdiction over La Grange's claim. La Grange's claim is not "wholly collateral." The determination of what remedy should flow from violations of the NLRA is a necessary part of every case involving the commission of an unfair labor practice; it presents a question of "how [the NLRB's] power [is] wielded," not the agency's "power generally." *Axon*, 598 U.S. at 193. And finally, *Axon*'s "expertise" factor suggests that district-court subject-matter jurisdiction over this claim is improper because the Board's power to fashion remedies has long been recognized by the Supreme Court as a core area of Board expertise. *See, e.g.*, *Phelps Dodge*, 313 U.S. at 194.

Furthermore, allowing this remedial issue to percolate through the administrative process is particularly appropriate where, as here, the ALJ hearing the case, or the Board on review, might determine that ULP Complaint's allegations have no merit or that the requested remedies aren't warranted or exceed statutory authority—thereby obviating any need to address the constitutional issue. *See Elgin*, 567 U.S. at 22–23 (finding lack of

---

*Thryv* remedies was subject to the NLRA's statutory exhaustion requirement. While the court acknowledged circuit law finding that *Thryv* remedies exceeded the Board's remedial authority under the NLRA, *id.*, it noted that other circuits had reached the opposite conclusion and thus found that the *Thryv* remedies were not so "obviously" beyond the Board's powers as to permit parties to circumvent the NLRA's jurisdictional exhaustion requirement. This suggests that La Grange's claim is not "of the type" Congress intended to exclude from statutory review under the NLRA. *Axon*, 598 U.S. at 186. And while *Trader Joe's* involved a statutory rather than constitutional challenge to *Thryv* remedies, the fact that the other legal grounds may obviate the need to reach to constitutional claim further supports channeling the claim through statutory review procedures. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 22–23 (2012).

subject-matter jurisdiction under *Thunder Basin* where "preliminary questions unique to the employment context may obviate the need to address the constitutional challenge.").[15]

With these principles in mind, district courts have repeatedly held that they lack jurisdiction to consider similar Seventh Amendment claims leveled against pending enforcement proceedings. *See, e.g.*, *Lemelson v. SEC*, 793 F. Supp. 3d 1, 9 (D.D.C. 2025) (describing the "chorus" of similar decisions), *vacated as moot*, No. 25-5208, 2026 WL 479090 (D.C. Cir. Feb. 17, 2026); *Millennia Hous. Mgmt. v. U.S. Dep't of Hous. & Urb. Dev.*, 783 F. Supp. 3d 1051, 1063–66 (N.D. Ohio 2025), *appeal docketed*, No. 25-3373 (6th Cir. May 13, 2025); *Huff & Puffers, LLC v. U.S. Food & Drug Admin.*, No. 8:24-CV-02110, 2025 WL 1092696, at *3–6 (C.D. Cal. Feb. 27, 2025);  *Blankenship v. FINRA*, No. 24-cv-3003, 2024 WL 4043442, at *2–3 (E.D. Pa. Sep. 4, 2024), *aff'd on other jurisdictional grounds*, No. 24-2860 (3d Cir. Jan. 8, 2026).

Indeed, several decisions specifically reject the existence of jurisdiction to consider the very claim that La Grange raises here—that ULP cases involving *Thryv* remedies must be tried before a jury.[16] *Nexstar Media*, *Inc. Grp. v. NLRB*, 746 F. Supp.

---

[15] The Board's composition has changed since *Thryv* issued in 2022. In fact, two of the three sitting members took office less than three months ago. *See* NLRB, Members of the NLRB Since 1935, https://www.nlrb.gov/about-nlrb/who-we-are/the-board/members-of-the-nlrb-since-1935. In a recent decision, those two members found "no need at this time to express an opinion whether the novel remedies announced by the Board majority in *Thryv* are permissible under the Act" and, consistent with longstanding Board practice, "agree[d] to apply that precedent in the absence of a three-member majority to overrule it." *Lodi Volunteer Rescue Squad*, 374 NLRB No. 26, slip op. at 4 n.3 (2026).

[16] The NLRB recognizes that in *Wulferic, LLC v. FDA*, Chief Judge O'Connor of the Northern District of Texas exercised jurisdiction over a Seventh Amendment claim challenging "the FDA's civil money penalty proceeding." 793 F. Supp. 3d 830, 837, 839

3d 464, 470–73 (N.D. Ohio 2024); *YAPP USA Auto. Sys., Inc. v. NLRB*, 748 F. Supp. 3d 497, 512–16 (E.D. Mich 2024), *appeal voluntarily dismissed*, No. 24-1754, 2025 WL 2606098 (6th Cir. Aug. 4, 2025); *Hannam Chain USA, Inc. v. NLRB*, No. 25-2896 (TJK), 2025 WL 3204539, at *8 & n.7 (D.D.C. Nov. 17, 2025); *VHS Acquisition Subsidiary No. 7 v. NLRB,*, 805 F. Supp. 3d 1, 7–8 (D.D.C. 2024).

The *Axon* factors aside, there's a further practical reason why the Court should not exercise jurisdiction over La Grange's Seventh Amendment claim. In *Hiran Management, Inc. v. NLRB*, 157 F.4th 719 (5th Cir. 2025), which was decided after La Grange filed this suit, the Fifth Circuit held that the Board "lacks statutory authority to award" *Thryv* remedies—i.e., "all foreseeable costs incurred" by ULP victims—and denied enforcement to that portion of the Board's order. *Id.* at 722, 729. In reaching this outcome, the Fifth Circuit found it "unnecessary to reach" the Seventh Amendment argument as well as other constitutional arguments the employer in that case had pressed. *Id.* at 722 n.1.

There are two relevant takeaways from this disposition. First, if the Board were to

---

(N.D. Tex. 2025) (emphasis omitted), *appeal docketed*, No. 25-11112 (5th Cir. Oct. 3, 2025). But here, unlike in *Wulferic*, La Grange is levelling a challenge against a particular remedy the NLRB might award, and not challenging the NLRB's power "to adjudicate the *action* within an administrative tribunal." *Id.* at 841 (emphasis added); *see also Comcast Corp. v. Dep't of Labor*, No. 1:24-CV-1401 (PTG/IDD), 2025 WL 2712424, at *5 (E.D. Va. Sep. 23, 2025) (exercising jurisdiction over Seventh Amendment claim that "would arise under *any* appearance before a DOL ALJ" and distinguishing the very kind of claim presented here that "only challenge[s] the agency's ability to award a specific type of remedy"), *appeal docketed*, No. 25-2226 (4th Cir. Oct. 15, 2025). Regardless, *Wulferic* is not binding on this Court, and is in conflict with a litany of other opinions addressing this issue. *See supra* pp. 30-31 (citing cases).

31

issue a liability order commanding La Grange to pay "all foreseeable costs" to those affected by its alleged ULPs, that portion of the Board's order would not be enforced by the Fifth Circuit. *See* 29 U.S.C. § 160(f) (providing that a person aggrieved by a final Board order may seek judicial review in a court of appeals "wherein the unfair labor practice in question was alleged to have been engaged in or wherein such person resides or transacts business" as well as in the D.C. Circuit). And second, exercising jurisdiction over La Grange's Seventh Amendment claim now would result in a bizarre inversion of the "longstanding principle"—honored by the Fifth Circuit in *Hiran Management*—"that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Camreta v. Greene*, 563 U.S. 692, 705 (2011) (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988)).

Accordingly, La Grange's Seventh Amendment claim should be dismissed for lack of subject-matter jurisdiction.

> **B. If the Court were to conclude that it has jurisdiction over La Grange's Seventh Amendment claim, the Court should grant summary judgment in favor of the Board because that claim lacks merit.**

Even if this Court had jurisdiction over La Grange's Seventh Amendment claim, that claim is without merit. There is a two-step analysis for Seventh Amendment challenges. First, a court must determine whether the underlying claim and remedy arise under the common law. If they do, the court must determine whether the Supreme Court's "public rights" doctrine nonetheless allows Congress to assign the matter to agency adjudication without a jury trial. *Jarkesy*, 34 F.4th at 452–53; *see also Atlas*

32

*Roofing Co., Inc. v. Occupational Safety Health & Rev. Comm'n*, 430 U.S. 442 (1977). La Grange's jury-trial claim fails under both steps of that analysis. Here, it makes sense to address these inquiries in reverse order because the public-rights exception alone is sufficient to defeat La Grange's Seventh Amendment claim.

### i. Because NLRB proceedings effectuate public rights, the Seventh Amendment does not apply.

In *Jarkesy*, the Supreme Court specifically held that Congress could properly insulate even legal remedies from the Seventh Amendment right to a jury trial where the underlying proceeding involves "public rights." 603 U.S. 109, 127–28 (2024). *Jarkesy* found this exception inapplicable in that particular case because the "fraudulent conduct" statutory provisions being enforced there "derive[d] from, and are interpreted in light of, their common law counterparts." *Id.* at 138. But *Jarkesy* left undisturbed the Supreme Court's longstanding, directly on-point precedent holding that the NLRB's ULP proceedings, which involve rights "unknown to the common law," *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937), fall within the public-rights exception.[17] *Jarskey*, 603 U.S. at 138 (citing *Jones & Laughlin* and its discussion in *Atlas Roofing Co.*, 430 U.S. at 453); *see also id.* at 122 (citing *Curtis v. Loether*, 415 U.S. 189, 193 (1974), which distinguished the unique public-rights scheme at issue in *Jones & Laughlin* from other newly created rights); *Agwilines, Inc. v. NLRB*, 87 F.2d 146, 150 (5th Cir.

---

[17] Even where precedent "appears to rest on reasons rejected in some other line of decisions[,]" where a case has direct application, the Supreme Court has instructed that courts are to "follow the case which directly controls." *Agostini v. Felton*, 521 U.S. 203, 237 (1997).

1936) (finding that the NLRA's substantive rights "were not only unknown, they were *obnoxious* to the common law.") (emphasis added).

Ultimately, it is beyond dispute that NLRA rights are public, not private. *See Nat'l Licorice Co.*, 309 U.S. at 362 ("The proceeding authorized to be taken by the Board under the National Labor Relations Act is not for the adjudication of private rights. . . . The Board acts in a public capacity to give effect to the declared public policy of the Act . . . ."); *Va. Elec. & Power Co. v. NLRB*, 319 U.S. 533, 543 (1943) (claims arising under the NLRA "vindicate public, not private rights"); *see also Emporium Capwell Co.*, 420 U.S. at 62 ("These are, for the most part, collective rights, rights to act in concert with one's fellow employees; they are protected not for their own sake but as an instrument of the national labor policy of minimizing industrial strife . . . ."); *Entergy Miss., Inc. v. NLRB*, 810 F.3d 287, 298–99 (5th Cir. 2015) ("[W]hen the Board brings an enforcement action under the Act, it acts in the public interest, even when it obtains money damages on behalf of private persons.") (citing *Nabors v. NLRB*, 323 F.2d 686, 688–89 (5th Cir. 1963)). Accordingly, the public-rights exception provides this Court ample reason to grant summary judgment to the NLRB on La Grange's Seventh Amendment claim.

### ii. ULP proceedings involving *Thryv* remedies do not implicate the Seventh Amendment.

Even if the public-rights exception did not apply, La Grange cannot establish a valid Seventh Amendment claim because the underlying ULP adjudication is not "legal in nature." *Jarkesy*, 603 U.S at 122. To determine whether a suit is legal in nature, courts

34

must consider whether the cause of action resembles common law causes of action, *id.* at 123–24, and whether the remedy is the sort that traditionally "could only be enforced in courts of law." *Id.* at 125. The first factor heavily favors the NLRB, while the second consideration—at least under current Circuit law and solely with respect to *Thryv* remedies—favors La Grange. Because "the remedy [i]s the 'more important' consideration," *id.* at 123, the NLRB preserves for further review its position that ULP proceedings are not legal in nature, even when *Thryv* remedies are at stake.

### a. The claims here have no basis in common law.

A cause of action can be legal in nature if there is a "close relationship" between a statutory claim and a "common law 'ancestor.'" *Id.* at 125 (quoting *Foster v. Wilson*, 504 F.3d 1046, 1050 (9th Cir. 2007)). But La Grange does not allege that proceedings under the NLRA "arise" under common law. *See Jones & Laughlin*, 301 U.S. at 48; *see also NLRB v. Colten*, 105 F.2d 179, 182 (6th Cir. 1939).

Nor could it. Claims under the NLRA have no common law ancestor and have been explicitly recognized by the Supreme Court as "unknown to the common law." *Jones & Laughlin*, 301 U.S. at 48.[18] Indeed, as noted above, such claims were "not only

---

[18] La Grange overreads *Mertens v. Hewitt Associates*, 508 U.S. 248, 255 (1993), to imply that make-whole relief was unavailable in courts of equity. Mot. at 10. To the contrary, the Court recognized that "[a]t common law, however, there were many situations—not limited to those involving enforcement of a trust—in which an equity court could establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its authority." *Mertens*, 508 U.S. at 256. Thus, the Court's holding there did not rest upon any notion that make-whole relief was unavailable in equity; instead, the Court found that expanding ERISA's statutory text of "equitable relief" to include all relief available at equity would render certain statutory language "superfluous," contrary

35

unknown, they were obnoxious to the common law." *Agwilines*, 87 F.2d at 150. As such, the first *Jarkesy* prong undermines any assertion that the ULP claims at issue here are legal in nature.

### b. The NLRB preserves the argument that the remedies at issue here are equitable in nature.

La Grange admits that the Seventh Amendment only attaches to claims seeking "*legal* relief[.]" Compl. ¶ 79 (emphasis in original). In the Board's view, *Thryv* remedies—that is, the make-whole relief authorized by the Board for "direct or foreseeable pecuniary harm" arising from a ULP, 372 NLRB No. 22, slip op. at 1—are equitable, not legal. The rationale of *Thryv* rests on the Board's judgment that "[w]e cannot fairly say that employees have been made whole until they are fully compensated for these kinds of pecuniary harms[.]" *Id.* at 15. *Thryv* remedies are focused entirely on equitable considerations of restoring the status quo that an unfair labor practice disrupts and ensuring that the victims of unfair labor practices are made whole.

By contrast, in *Jarkesy*, the Court determined that the SEC's civil monetary penalties, which had the potential to far exceed any loss to victims and could have been pocketed directly by the government (as opposed to being returned to victims), clearly were designed to deter conduct, not to make individuals whole. *Jarkesy*, 603 U.S. at 122–26. Thus, the Court concluded that "[s]uch a penalty by definition does not 'restore the status quo' and can make no pretense of being equitable." *Id.* at 124 (quoting *Tull*, 481

---

to congressional intent. *Id.* at 258*; see Jarkesy*, 603 U.S. at 123 (explaining that monetary remedies can be equitable if designed "solely to 'restore the status quo.'").

U.S. at 422).

However, the NLRB's position that *Thryv* remedies are equitable in nature is foreclosed by the Fifth Circuit's decision in *Hiran Management,* 157 F.4th at 729. In that case, the Fifth Circuit held that *Thryv* remedies are akin to legal damages, which are beyond the Board's statutory authority to award. Id. The Court of Appeals therefore declined to enforce the portion of the Board's order requiring the respondent to "reimburse all foreseeable costs incurred by the discharged employees." *Id*.

The NLRB acknowledges that *Hiran Management* is controlling precedent on this Court. Accordingly, the NLRB preserves its argument that it is entitled to judgment as a matter of law on La Grange's Seventh Amendment claim for the additional reason that all NLRB proceedings, including those in which *Thryv* remedies are awarded, are equitable, not legal, in nature.

>    **C. La Grange does not appear to seek a permanent injunction on its Seventh Amendment claim, but if it does, the injunction should be denied because La Grange fails to meet the other non-merits factors for injunctive relief.**

Because La Grange's Seventh Amendment claim fails on the merits, it is not entitled to any relief on Count III of its Complaint. And even if La Grange had a viable Seventh Amendment claim, it neither seeks nor qualifies for a permanent injunction on that count. *See* Compl. at 16–17 (seeking declaratory relief on Seventh Amendment claim and a permanent injunction only with respect to removability claims).

>    **i.   La Grange cannot show it will suffer irreparable harm.**

As an initial matter, La Grange cannot show irreparable harm because Seventh Amendment harms are remediable by a judgment requiring a new trial. *Ponte*, No. 24-cv-

37

2379, 2024 WL 4730602, at *8 ("It is well-established that the harm resulting from the denial of a jury trial can be remedied on appeal, even after the case has already been tried—the reviewing court simply orders a new trial.") (citing *Tull*, 481 U.S. at 427, *Granfinanciera, S.A.*, 492 U.S. at 37, 64–65, and *Lytle v. Household Mfg.*, 494 U.S. at 552–53).

Further, NLRB proceedings are typically bifurcated into (1) a liability phase and (2) a compliance phase. As discussed above, *supra* p. 28, decisions on liability and remedies by ALJs and the Board must be judicially enforced before compliance is required. *Deena Artware*, 361 U.S. at 411. Thus, there will be no harm to La Grange from pursuing its Seventh Amendment claim through normal statutory review.

### ii.    La Grange cannot show that any harm is imminent.

La Grange provides no basis for finding that the NLRB potentially pursuing the make-whole remedies referenced in *Thryv* harms La Grange in any irreparable way. *See* Mot. 15–17. First, the potential injury La Grange alleges remains entirely speculative. No ALJ has recommended, nor has the Board ordered, any remedy, let alone the *Thryv*-type remedies on which La Grange bases its Seventh Amendment claim. *Id*. at 10–13; *see, e.g.*, *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) ("An injunction is appropriate only if the anticipated injury is imminent and irreparable.") (internal citations omitted).

More importantly, even if the Board lacks authority to order *Thryv*-type remedies, this purported defect would not taint the entire administrative proceeding. Nothing this Court decides about *Thryv* would affect the Board's power, under Section 10(c) of the NLRA, to issue a "cease and desist" order and to award other statutory remedies such as

backpay, long deemed outside the Seventh Amendment's reach. 29 U.S.C. § 160(c); *see Jones & Laughlin Steel Corp.*, 301 U.S. at 49; *Agwilines, Inc.,* 87 F.2d at 150–51. So, at most, any injunctive relief on Count III should do no more than enjoin the NLRB from ordering *Thryv* remedies in its administrative proceedings. In no event is La Grange entitled to the "extraordinary remedy" of a permanent injunction halting the entire administrative process. *Winter v. National Resources Defense Council*, 555 U.S. 7, 24 (2008); *see M.D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 272 (5th Cir. 2018) ("[I]njunctions must be 'narrowly tailored to remedy the specific action which gives rise to the order.'") (quoting *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 586 (5th Cir. 2013)).

### iii.    The merged balance of hardships and public interest factors also weigh against a permanent injunction.

As discussed above, Section I.B, the merged balance-of-hardships and public-interest factors also weigh against a permanent injunction. A permanent injunction would cause substantially greater harm to the government and the general public than any harm La Grange would face having to appear before the NLRB.

The Board is a "public agency acting in the public interest . . . to assure protection from [unfair labor practices.]" *Amalgamated Util. Workers v. Consol. Edison Co. of N.Y.*, 309 U.S. 261, 265 (1940). The Board's procedures are the sole legal mechanism for individuals to assert their "fundamental right" to engage in union-related or other concerted activity "without restraint or coercion." *Jones & Laughlin*, 301 U.S. at 33. A decision to enjoin the enforcement of the NLRA because of an alleged defect in one

potential remedy would frustrate the intent of the statute to protect "public rights." *Id*. So again, at most, any injunction on this claim should do no more than enjoin the Board from awarding *Thryv* remedies in La Grange's ULP case.

### III. This Court lacks subject-matter jurisdiction over La Grange's combined-functions claim, which is meritless in any event.

#### A. La Grange cannot establish district court jurisdiction on its combined-functions claim.

To the extent La Grange's combination-of-functions argument largely rehashes the Seventh Amendment claim addressed above, it runs into the same failure to clear *Axon*'s jurisdictional hurdles described above, *see supra* Section II.A.[19] First, contesting a particular subset of remedies that may result from a ULP proceeding is not a "structural" challenge to the Agency. Second, determining what remedies are owed from violations of the NLRA is a question of how the agency's power is wielded, not the "power generally" of the agency. And finally, the Supreme Court has long recognized the Board's power to fashion remedies under Section 10(c). *E.g., Phelps Dodge Corp.*, 313 U.S. at 194.

#### B. La Grange's combined-functions claim fails on the merits.

Even if La Grange were to establish district court jurisdiction over its combined-functions claim, that claim fails on the merits. La Grange appears to fault the Board for choosing to engage in policymaking through adjudication, as opposed to rulemaking.

---

[19] La Grange's claim regarding an unlawful combination of functions within the NLRB is ultimately unclear. The NLRB recognizes, however, that *Axon* permitted a district court to exercise jurisdiction over the claim that the FTC's "combination of prosecutorial and adjudicative functions . . . renders *all* of its enforcement actions unconstitutional." 598 U.S. at 183 (emphasis added). Such a "fundamental, even existential" challenge, *id.* at 180, bears little resemblance to La Grange's here. *See* Mot. 13–15.

Mot. at 13–14. But La Grange fails to explain how this choice creates any combination-of-powers concerns. What's more, this claims is contrary to Supreme Court precedent. *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974) ("[T]he Board is not precluded from announcing new principles in an adjudicative proceeding and . . . the choice between rulemaking and adjudication lies in the first instance within the Board's discretion.").

Next, La Grange appears to claim that awarding make-whole relief beyond backpay and reinstatement exceeds the statutory authority of the Board and converts its public regulatory action into an adjudication of private rights. Mot. at 14–15. Again, it is unclear how these arguments invoke any combination-of-functions concerns. And they are clearly incorrect under binding precedent. *E.g.*, *Phelps Dodge Corp.* 313 U.S. at 188–89, 198 (Section 10(c)'s reference to "reinstatement of employees with or without backpay" merely serves as an "illustrative application" of the Board's "diverse" remedial authority); *Va. Elec. & Power Co.*, 319 U.S. at 543 (claims arising under the NLRA "vindicate public, not private rights").[20]

### C. La Grange does not seek, nor could it obtain, a permanent injunction on its combined-functions claim because it fails to meet the other non-merits factors for injunctive relief.

Though La Grange's Complaint does not specify *any* relief it seeks pertaining to its combined-functions claim beyond the preliminary injunction that this Court has

---

[20] Even if La Grange's arguments could somehow be understood to raise an issue regarding the purported combination of adjudicatory and prosecutorial functions within the NLRB, such an argument would not only proceed from a mistaken premise—the

41

already issued, *see* Compl. at 16–17, any attempt to seek a permanent injunction on this claim would fail because La Grange does not satisfy the other non-merits factors for injunctive relief.

As discussed above in Section II.C.i and II.C.ii, there is no basis to support a finding that La Grange will suffer any irreparable or imminent harm from the ULP proceeding. Further, as discussed above in Section II.C.iii, the balance-of-hardship and public-interest factors also weigh against a permanent injunction on this claim. The analysis presented in that sections applies equally here.

## CONCLUSION

On summary judgment, the Court should (1) sever the removal restrictions La Grange challenges in Counts I and II; (2) dismiss Counts III and IV, or grant summary judgment to the NLRB on those claims, and (3) in all events, deny permanent injunctive relief.

Respectfully submitted,

NATIONAL LABOR RELATIONS BOARD
*Contempt, Compliance, & Special Litigation Branch*

Dalford Dean Owens
*Supervisory Attorney*
S.D. Tex. ID No. 1132540
State Bar No. 24060907
NATIONAL LABOR RELATIONS BOARD
1015 Half Street S.E., Fourth Floor

---

General Counsel, who is independent of the Board, has final authority to prosecute NLRA violations—*see Exela Enter. Sols., Inc. v. NLRB*, 32 F.4th 436, 443–44 (5th Cir. 2023)—it would also be unavailing under Fifth Circuit precedent. *Illumina, Inc. v. FTC*, 88 F.4th 1036, 1047 (5th Cir. 2023) ("[A]dministrative agencies can, and often do, investigate, prosecute, and adjudicate rights without violating due process.").

42

Washington, D.C. 20570
Tel: (202) 273-2934
Email: dean.owens@nlrb.gov

Kevin P. Flanagan
*Deputy Assistant General Counsel*

Michael S. Dale
*Supervisory Attorney*

David P. Boehm
*Senior Trial Attorney*

/s/ Grace L. Pezzella
Grace L. Pezzella
*Attorney*
MA Bar No. 709601 – *Pro hac vice*
NATIONAL LABOR RELATIONS BOARD
1015 Half Street S.E., Fourth Floor
Washington, D.C. 20570
(202) 273-0247
Email: grace.pezzella@nlrb.gov

**CERTIFICATE OF SERVICE**

I certify that on March 23, 2026, I electronically filed this document with the Clerk of Court using the CM/ECF system.

/s/ Grace L. Pezzella
Grace L. Pezzella
*Attorney*
MA Bar No. 709601 – *Pro hac vice*
NATIONAL LABOR RELATIONS BOARD
1015 Half Street S.E., Fourth Floor
Washington, D.C. 20570
(202) 273-0247
Email: grace.pezzella@nlrb.gov

43